## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHARTER OAK INSURANCE COMPANY    :
One Tower Square    :
Hartford, CT 06183-6014    :
   :
    Plaintiff,    :
   :
    v.    :
   :
MAGLIO FRESH FOOD d/b/a MAGLIO'S    :
SAUSAGE COMPANY    :
3632 S. Third Street    :
Philadelphia, PA 19148    :
   :
    and    :
   :
AMERICAN GUARANTEE AND    :
LIABILITY INSURANCE COMPANY    :
1400 American Lane    :
Tower 1 19th Floor    :
Schaumburg, IL 60196-1056    :
   :
    Defendants.    :

_____

## COMPLAINT

Charter Oak Fire Insurance Company ("Charter Oak") brings the following claims

against Maglio Fresh Food d/b/a Maglio's Sausage Company ("Maglio") and American

Guarantee and Liability Insurance Company ("AGLIC"), alleging as follows:

### INTRODUCTION

1.    In this action, Charter Oak seeks a declaratory judgment concerning the rights and

obligations of the parties under a primary general liability policy issued by Charter Oak to

Maglio.

2.      Specifically, Charter Oak seeks a judicial declaration that no coverage is afforded to Maglio under the primary general liability policy issued by Charter Oak to Maglio for the general verdict entered against Maglio on the Maglio Brand claim on October 3, 2011, in the matter styled *Leonetti's Frozen Foods, Inc. v. Maglio Fresh Food d/b/a Maglio's Sausage Company*, Philadelphia County Court of Common Pleas, Commerce Program, March Term 2010, No. 1320 ("the Underlying Action"), because the Charter Oak policy is soon to be exhausted by payment in connection with the (separate) general verdict entered against Maglio in the Underlying Action on the Forte Brand claim, and because Charter Oak has no obligation to indemnify Maglio for the verdict on the Maglio Brand claim, as no coverage is afforded to Maglio for the verdict on the Maglio Brand claim under the Charter Oak policy, and would be precluded in any event by one or more policy exclusions, and by Maglio's breach of the cooperation provisions contained in the Charter Oak policy.

3.      In the Underlying Action, Leonetti's Frozen Foods, Inc. ("Leonetti's") sought compensatory and punitive damages and equitable relief from Maglio in connection with its alleged unfair competition, trade libel, tortious interference with contract, negligent misrepresentation, and unjust enrichment with respect to its Maglio Brand and Forte Brand stromboli (hereinafter referred to as the "the Maglio Brand" and "the Forte Brand" claims, respectively; collectively, "the Claims") manufactured by Leonetti's and American Kitchen Delight, Inc. ("AKDI"), and distributed by Maglio. Leonetti's' claims for negligent misrepresentation, unjust enrichment and equitable relief were ultimately dismissed as to Maglio, and the Maglio and Forte Brand claims ultimately proceeded to trial against Maglio.

4.      Maglio tendered the Underlying Action to Charter Oak, and Charter Oak provided Maglio with a defense in the Underlying Action, subject to a reservation of its rights, for over

two years, through two trials, and through post-trial motions. Charter Oak's reservation of rights was based on its determination that the Charter Oak policy issued to Maglio potentially covered only the trade libel claim asserted against Maglio in the Underlying Action, and did not cover punitive or exemplary damages. Maglio was apprised of Charter Oak's coverage position in a timely manner, and was reminded of the limited coverage afforded to it under the Charter Oak policy consistently, and throughout the course of the Underlying Action.

5.     Maglio was unable to reach a settlement with Leonetti's as to the Claims. Thus, in advance of the trial scheduled on the Maglio Brand and Forte Brand claims, Charter Oak filed a Petition for Limited Intervention so as to be allowed to submit special verdict forms to the jury on the Claims. Charter Oak's petition was denied, and it was not allowed to submit its proposed special verdict forms to the jury. The trial court agreed to allow Maglio to submit Charter Oak's proposed special verdict forms to the jury; however, Maglio declined to do so.

6.      The trial on the Claims was ultimately bifurcated, resulting in separate trials and the entry of separate general verdicts against Maglio on the Maglio Brand and Forte Brand claims. The Maglio Brand claim was submitted to the jury on a single count for unfair competition, which by Leonetti's own admission, had no trade libel component. The Forte Brand claim was likewise submitted to the jury on a single count of unfair competition; however, a component of that count was based on evidence that may have amounted to trade libel. General verdicts were entered against Maglio on both the Maglio Brand and Forte Brand claims, The general verdicts have yet to be reduced to judgment.

7.     At no time prior to or during the trials on the Maglio Brand or Forte Brand claims did Leonetti's issue a settlement demand to Maglio for the Claims for an amount within the Charter Oak policy limit of $1 million. Moreover, it was not until December of 2011, during the

trial on the Forte Brand claim, that Maglio requested that Charter Oak make its $1 million policy limit available towards a settlement of the Claims. Charter Oak tendered its $1 million policy limit to Maglio, and authorized it to use this money to attempt to settle the Claims. Maglio was unable to settle the Claims.

8.     After the general verdicts were entered against Maglio in the Underlying Action, Charter Oak continued to defend Maglio through post-trial motions, and agreed to defend Maglio through appeal, subject to a reservation of its rights. Moreover, Charter Oak informed Maglio that it would pay the cost of an appeal bond up to and including its $1 million policy limit and any post judgment interest incurred through the date that it deposited those funds with the court. Charter Oak also informed Maglio that it would assist Maglio, to the extent possible, with its effort to obtain an appeal bond for the balance of the general verdicts, and that it would pay for the cost of seeking and obtain a reduction of security in connection with the appeal of the general verdicts entered against Maglio in the Underlying Action. Finally, Charter Oak offered to, and ultimately did, deposit its $1 million policy limit, plus post judgment interest accrued as of the date of its deposit of those funds, with the court in the matter styled *Charter Oak Fire Insurance Company v. Leonetti's Frozen Foods, Inc., et al.*, Philadelphia County Court of Common Pleas, January Term 2012, No. 3429 ("the Equitable Interpleader Action").

9.     Maglio did not question Charter Oak's coverage position concerning the Claims until after the general verdict was entered against it on the Maglio Brand claim. Thereafter, and despite Charter Oak's request that Maglio do so, Maglio failed to provide Charter Oak with the factual and/or legal basis for its contention that the general verdict entered against it on the Maglio Brand claim is covered under the Charter Oak policy.

10.     Instead, and in direct contravention with the cooperation clause contained in the Charter Oak policy, Maglio entered into a settlement with Leonetti's to which Charter Oak did not consent and was not a party, and pursuant to which Maglio agreed to a settlement amount well in excess of the general verdicts entered against it in the Underlying Action, misrepresented the basis for the general verdicts entered against it, assigned its rights to Leonetti's, waived its right to appeal the general verdicts, and agreed to enter into and seek entry of a consent judgment for the settlement amount.

11.     As is set forth more fully below, Charter Oak not only met, but has exceeded its obligations to Maglio in connection with the Underlying Action under the Charter Oak policy, and under the law.  Nonetheless, given Maglio's and Leonetti's' Agreement, and motion to enter consent judgment for the amount of the settlement reached in the Agreement, Charter Oak has determined that it must seek an adjudication from this Court that Charter Oak has no further obligation to Maglio in connection with the Claims under the Charter Oak policy, or under the law.  Charter Oak's request for declaratory judgment is predicated on the fact that the Charter Oak policy will be exhausted by payment once the court in the Equitable Interpleader Action releases the funds deposited by Charter Oak to Leonetti's, and, alternatively, on the grounds that no coverage is afforded to Maglio for the general verdict entered against it on the Maglio Brand claim under the Charter Oak policy in any event.

## THE PARTIES

12.     Charter Oak is a Connecticut corporation, with its principal place of business located in Hartford, Connecticut.  Charter Oak is, therefore, a citizen of Connecticut.

13.     Maglio is a Pennsylvania corporation, with its principal place of business located in Philadelphia, Pennsylvania.  Maglio is, therefore, a citizen of Pennsylvania.

14.     Nominal defendant AGLIC is a New York corporation, with its principal place of business in Illinois.  AGLIC is, therefore, a citizen of Illinois and New York.  AGLIC issued an umbrella/excess policy to Maglio in effect for the relevant time period and thus has an interest in whether the Charter Oak policy affords coverage to Maglio for the Claims.

## JURISDICTION AND VENUE

15.     This Court has jurisdiction under 28 U.S.C. § 1332 because no plaintiff is a citizen of the same state as any defendant and the amount in controversy exceeds $75,000.

16.     This Court has jurisdiction over this declaratory judgment action under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*

17.     Venue is proper in this district under 28 U.S.C. § 1391(b)(1) because Maglio regularly conducts business by distributing and/or supplying stromboli products into or through this judicial district.  Moreover, venue is proper in this district under 28 U.S.C. § 1391(b)(2) because the events that give rise to the declaratory judgments sought herein occurred in this judicial district.

## FACTUAL ALLEGATIONS

### The Policies

18.     Charter Oak issued primary general liability policy number Y-630-5070A914-COF-09 to Maglio for the policy period in effect February 1, 2009, through and including February 1, 2010 (hereinafter, "the Charter Oak Primary Policy").  A complete copy of the Charter Oak Primary Policy is attached hereto as Exhibit "1."

19.     The Charter Oak Primary Policy affords Maglio coverage for "bodily injury," "property damage," personal injury," "advertising injury," and/ "website injury" to which the Charter Oak Primary Policy applies, provides that Charter Oak will have the "right and duty to

defend" Maglio against any "suit" seeking those damages, and that Charter Oak's right and duty to defend ends when it has "used up the applicable limit of insurance in the payment of judgments or settlements" under Coverages A or B, or medical expenses under Coverage C.[1]

20.     Under the Charter Oak Primary Policy, Coverage B is modified by the Web Xtend Liability endorsement (form CG D2 34 01 05) (hereinafter, "the Web Xtend Endorsement"), which provides in relevant part as follows:

1. Insuring Agreement.

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal injury", "advertising injury" or "web site injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "personal injury", "advertising injury", or "web site injury" to which this insurance does not apply.  We may at our discretion investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

    (1)    The amount we will pay for damages is limited as described in Section III—Limits Of Insurance; and

    (2)    Our right and duty to defend end when he have used up the applicable limit of insurance in the payment of judgments or settlements under Coverage A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments—Coverages A and B.

    b.    This insurance applies to:

---

[1]     Neither Coverage A nor Coverage C is applicable to the claims asserted against Maglio in the Underlying Action, nor does either Coverage A or Coverage C afford Maglio coverage for either of the general verdicts entered against it in the Underlying Action, as Leonetti's did not allege nor did it proffer evidence that it sustained "bodily injury," "property damage" or "medical coverage" as defined in the Charter Oak Primary Policy as a result of Maglio's alleged unfair competition (and/or related counts) which were the subject of the Underlying Action.

(1)     "Personal injury" caused by an offense arising out of your business, excluding advertising, publishing, broadcasting or telecasting done by or for you;

(2)     "Advertising injury" caused by an offense committed in the course of advertising your goods, products or services; or

(3)     "Web site injury" caused by an offense committed in the course of the visual or audio presentation of material on "your web site" or in the numerical expression of computer code used to enable "your web site"

but only if the offense is committed in the "coverage territory" during the policy period.

With respect to subparagraph b.(1) above, bulletins, financial or annual reports, or newsletters that are not published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supports will not be considered publishing.

"Personal injury" is defined in the Web Xtend Endorsement as follows:

"Personal injury means injury, other than 'bodily injury', arising out of one or more of the following offenses:

a.     False arrest, detention or imprisonment;

b.     Malicious prosecution;

c.     The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies by or on behalf of its owner, landlord or lessor, provided that the wrongful eviction, wrongful entry or invasion of the right of private occupancy is performed by or on behalf of the owner, landlord or lessor of that room, dwelling or premises;

d.     Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or 'suit' is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged; or

e.     Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life."

"Advertising injury" is defined in the Web Xtend Endorsement as follows:

"Advertising injury means injury, arising out of more or more of the following offenses:

a.   Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services, provided that claim is made or 'suit' is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged;

b.   Oral, written or electronic publication of material that appropriates a person's likeness, unreasonably places a person in a false light or gives unreasonable publicity to a person's private life; or

c.   Infringement of copyright, title or slogan, provided that claim is made or 'suit' is brought by a person or organization claiming ownership of such copyright, title or slogan."

21.   The Web Xtend Endorsement contains several exclusions that pertain to Coverage B, including but not limited to the following:

**a.   Knowing Violation Of Rights Of Another**

"Personal injury", "advertising injury" or "web site injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury", "advertising injury" or "web site injury."

**b.   Material Published With Knowledge Of Falsity**

"Personal injury," "advertising injury" or "web site injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

\*       \*       \*

**g.   Quality Or Performance Of Goods—Failure To Conform To Statements**

"Advertising injury" or "web site injury" arising out of a breach of the failure of goods, products or services to conform with any statement of quality or performance made in the course of advertising your goods, products or services.

\*       \*       \*

**k.   Unauthorized Use Of Another's Name Or Product**

"Personal injury", "advertising injury" or "web site injury" arising out of the unauthorized use of another's name or product in your e-mail address,

domain name or metatag, or any other similar activities that mislead another's potential customers.

22.     Under the Charter Oak Primary Policy, the most Charter Oak is required to pay under Coverage B is $1 million for the sum of all damages because of all "personal injury," "advertising injury," and "web site injury" sustained by "any one person or organization."

23.     The Supplementary Payments – Coverages A and B section of the Charter Oak Primary Policy, provides in pertinent part as follows:

> 1.     We will pay, with respect to any claim we investigate or settle, or any "suit" against an insured we defend:
>
> \*          \*          \*
>
> c.     The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance.  We do not have to furnish these bonds.
>
> \*          \*          \*
>
> g.     All interest on the full amount of any judgment that accrues after entry of judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

24.     Finally, the Charter Oak Primary Policy contains conditions to coverage which require the insured to cooperate with Charter Oak, which are set forth in Section IV— Commercial General Liability Conditions, paragraphs 2 and 3, as follows:

> a.     Under paragraph 2., Duties in the Event of Occurrence, Offense, Claim or Suit, the insured and any other involved must cooperate with Charter Oak in the investigation or settlement of the claim or defense against the suit; assist Charter Oak in the enforcement of any right against any person or organization which may be liable to insured, and shall not voluntarily make a payment, assume any obligation or incur any expense without the consent of Charter Oak.
>
> b.     Under paragraph 3., Legal Action Against Us, no person or organization has a right to sue Charter Oak unless it has complied with all terms and conditions set forth in the Charter Oak Primary Policy, and may only sue

Charter Oak to recover on an "agreed settlement" or a final judgment entered against it. "Agreed settlement" is defined in this section to mean "a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative."

25.     AGLIC issued umbrella general liability policy number AUC3748621-07 to Maglio for the policy period in effect February 1, 2008, through and including February 1, 2010. AGLIC has declined coverage for both of the general verdicts entered against Maglio in the Underlying Action. A copy of AGLIC's May 1, 2012, declination letter is attached hereto as Exhibit "2."

<u>**The Lawsuits**</u>

26.     Leonetti's filed the Underlying Action on or about March 8, 2010. In its Amended Complaint, which was filed on or about October 6, 2010 ("Amended Complaint"), Leonetti's asserted claims against Maglio for tortious interference, unfair competition, trade libel, negligent misrepresentation, unjust enrichment, and equitable relief. The counts for tortious interference, unfair competition, trade libel, negligent misrepresentation and equitable relief were based on Maglio's conduct concerning the Forte Brand stromboli. The counts for unfair competition and unjust enrichment were based on Maglio's conduct concerning the Maglio Brand stromboli. The counts for negligent misrepresentation, unjust enrichment and equitable relief were ultimately dismissed as to Maglio. A copy of the Amended Complaint is attached hereto as Exhibit "3."

27.     Maglio tendered the claims that became the subject of the Underlying Action to Charter Oak on or about February 4, 2010.

28.     On or about May 4, 2010, Charter Oak issued a reservation of rights letter to Maglio in which it agreed to defend Maglio against the counts asserted against it in the Amended Complaint, subject to a reservation of its rights under the Charter Oak Primary Policy, and under

the law ("Reservation of Rights Letter").  A copy of Charter Oak's Reservation of Rights Letter is attached hereto as Exhibit "4."  In its Reservation of Rights Letter, Charter Oak informed Maglio that only the trade libel count asserted against it in the Underlying Action is potentially covered under the Charter Oak Primary Policy, and that the remaining counts asserted against it, as well as the punitive damages sought by Leonetti's, are not covered under the Charter Oak Primary Policy.

29.     Charter Oak issued an updated reservation of rights letter to Maglio on June 22, 2011, prior to the then-scheduled trial on the Claims ("Updated Reservation of Rights Letter"). A copy of Charter Oak's Updated Reservation of Rights Letter is attached hereto as Exhibit "5." In its Updated Reservation of Rights Letter, Charter Oak reiterated its coverage position (as was set forth in its Reservation of Rights Letter), stating once again that the trade libel count asserted against Maglio in connection with the Forte Brand claim was the only potentially covered count, and reiterating that the Charter Oak Primary Policy does not afford Maglio coverage for punitive or exemplary damages.

30.     Charter Oak filed a Petition for Limited Intervention in the Underlying Action on July 11, 2011, prior to the trials on the Claims ("the Petition"), in which it sought to intervene for the limited purpose of submitting special interrogatories to jury so as to preserve its ability to later contend that some or all of the claims and/or damages sought by Leonetti's are not covered under the Charter Oak Primary Policy.  A copy of the Petition is attached hereto as Exhibit "6."

31.     On or about July 21, 2011, Charter Oak provided copies of its proposed special interrogatories to the trial court judge and the parties in the Underlying Action.  Copies of Charter Oak's July 21, 2011, letter to Judge Bernstein and its proposed special interrogatories are attached hereto as Exhibits "7" and "8," respectively.

32.     No party to the Underlying Action filed an objection to Charter Oak's Petition nor did any party object to Charter Oak's proposed special interrogatories.  Nevertheless, the trial court judge denied Charter Oak's Petition on August 4, 2011, stating that Charter Oak could not intervene, but that it could sit at counsel table and "make appropriate suggestions to counsel for their insured to any issue 'joined' in this case."  A copy of the trial court's August 4, 2011, order denying the Petition ("the August 4 Order") is attached hereto as Exhibit "9."

33.     Charter Oak filed a motion for reconsideration of the trial court's denial of its Petition ("Motion for Reconsideration"), which was heard and denied by the trial court on September 19, 2011.  A copy of the transcript of the hearing on Charter Oak's Motion for Reconsideration is attached hereto as Exhibit "10."  Charter Oak also appealed the August 4 Order, but its appeal was denied.  Accordingly, and based on the August 4 Order, on or about September 29, 2011, Charter Oak asked counsel for Maglio to submit its special interrogatories to the jury.  A copy of Charter Oak's September 29, 2011, letter to Maglio is attached hereto as Exhibit "11."  Maglio declined to submit Charter Oak's special interrogatories to the juries in the Underlying Action.

34.     The Claims initially proceeded to trial in October of 2011.  However, after nine days of trial, the jury advised the trial court that it could not reach a decision concerning the Forte Brand claim.  The trial court declared a mistrial as to the Forte Brand claim, but allowed the Maglio Brand claim to proceed to trial on a single count of unfair competition.

35.     The allegations supporting Leonetti's' unfair competition count with respect to the Maglio Brand claim included the following:

        a.      That Leonetti's manufactured stromboli for Maglio on a "private label" basis for approximately seven years from 2000 – 2007;

b.      That thereafter, AKDI began to manufacture Maglio's stromboli products;

c.      That by changing manufacturers, the ingredients and nutritional information for Maglio's stromboli products necessarily changed; and Maglio's production costs decreased, enabling it to sell an "inferior product at a lower price";

d.      That Maglio misrepresented to customers that its stromboli products had not changed, by packaging the stromboli made by AKDI in the same packaging used when packaging stromboli products formerly made by Leonetti's, which also included Leonetti's' establishment number;

e.      That Maglio unfairly competed with Leonetti's by expressly and/or impliedly passing off products made by AKDI as being the same as that made by Leonetti's.

36.     During the trial on the Maglio Brand claim, the trial court advised counsel for Maglio and Leonetti's that they could present closing arguments on the unfair competition claim on the Maglio Brand claim only, and that they could request that the jury answer interrogatories concerning whether Maglio unfairly competed with respect to its own brand of stromboli, the amount of profit from Maglio's unfair competition, whether the unfair competition was outrageous, and the amount of punitive damages.  In addition, the Court ruled that "you may not argue that nobody was misled.  I've ruled as a matter of law that federal law presumes that, if the ingredients are not correct and if the picture is not correct, that is misleading; therefore you may not argue that it's not misleading."  *See* Trial Transcript, 10/03/11 at 7, a copy of which is attached hereto as Exhibit "12."

37.     Leonetti's unfair competition claim against Maglio with respect to the Maglio Brand claim was based on evidence that Maglio knowingly, falsely and deceptively advertised their products and that Maglio hid or destroyed documents between Maglio and its longtime

sales manager, Richard Taubman. *See* Trial Transcript, 09/19/11 at 41-45, a copy of which is attached hereto as Exhibit "13."

38.    During discussions regarding the jury instructions on the Maglio Brand claim, counsel for Leonetti's expressly stated that the Maglio Brand unfair competition claim was *not* based on trade libel, and that no underlying instruction for trade libel was necessary as to that claim. The jury was not instructed on trade libel or that unfair competition could be based on trade libel regarding the Maglio Brand claim, nor was there any evidence or testimony provided as to any alleged trade libel by Maglio in connection with or as a predicate for the unfair competition count on the Maglio Brand claim. *See* Trial Transcript, 09/28/11 at 62, a copy of which is attached hereto as Exhibit "14."

39.    A general verdict was entered against Maglio on the Maglio Brand claim for unfair competition on or about October 3, 2011, for a total of $2,555,000, of which $2,000,000 was for compensatory damages, and $555,000 of which was for punitive damages. The verdict on the Maglio Brand claim did not state the basis for the award of either the compensatory or punitive damages. A copy of the verdict entered against Maglio on the Maglio Brand claim is attached hereto as Exhibit "15."

40.    After the jury entered its general verdict against Maglio on the Maglio Brand claim, Charter Oak once again advised Maglio it had no coverage for the general verdict entered against it on the Maglio Brand claim under the Charter Oak Primary Policy, as it was predicated on a single count for unfair competition, and included punitive damages.

41.    Maglio questioned Charter Oak's coverage position on the Maglio Brand claim for the first time in a letter dated October 24, 2011 ("the Turchi Letter "). A copy of the Turchi Letter is attached hereto as Exhibit "16."

42.     Charter Oak responded to the Turchi Letter on or about October 31, 2011 ("Response to Turchi Letter"). A copy of Charter Oak's Response to the Turchi Letter is attached hereto as Exhibit "17." In its Response to the Turchi Letter, Charter Oak confirmed its determination that the verdict on the Maglio Brand claim is not covered under the Charter Oak Primary Policy to be consistent with its previously stated coverage position concerning the claims asserted against Maglio in the Underlying Action, and explained that the unfair competition count that formed the basis for the verdict on the Maglio Brand claim was not covered under the Charter Oak Primary Policy. Charter Oak requested, however, that "[t]o the extent that Maglio now believes that the Charter Oak Policy affords its coverage for unfair competition and/or punitive damages, please provide [Charter Oak] with the factual and/or legal basis for Maglio's coverage position as soon as possible." Moreover, Charter Oak confirmed that it would continue to defend Maglio in the Underlying Action, pursuant to a reservation of its rights, and that its defense of Maglio would include any post-trial motions concerning the verdict entered against Maglio on the Maglio Brand claim, and the re-trial of the Forte Brand claim. Maglio did not respond to Charter Oak's Response to the Turchi Letter.

43.     The Forte Brand claim was retried in December of 2011. The Forte Brand claim proceeded to trial on a single count of unfair competition, however, the evidence underlying that count may have amounted to trade libel. Leonetti's sought compensatory and punitive damages from Maglio in connection with the Forte Brand claim.

44.     At no time prior to or during the trial on either the Maglio Brand or Forte Brand claims did Leonetti's make a global settlement demand within the Charter Oak Primary Policy $1 million limit ("Policy Limit"). Moreover, it was not until December 16, 2011, during the trial on the Forte Brand claim, that Maglio demanded, for the first time, that Charter Oak offer its Policy

Limit towards a global settlement of the Claims.  A copy of Maglio's demand letter to Charter Oak is attached hereto as Exhibit "18."

45.     Charter Oak tendered its Policy Limit on December 22, 2011, before the unfair competition count on the Forte Brand claim was submitted to the jury.  Charter Oak memorialized its tender in its December 22, 2011, letter to Maglio, a copy of which is attached hereto as Exhibit "19."  However, despite Charter Oak's tender of its Policy Limit, Maglio was unable to settle the claims asserted against it in the Underlying Action, and the jury entered a general verdict against Maglio on the Forte Brand unfair competition claim in the amount of $660,000, all of which is for compensatory damages.  A copy of the verdict entered against Maglio on the Forte Brand claim is attached hereto as Exhibit "20."  The general verdict did not specify the basis for the compensatory damage award.

46.     Following the general verdict on the Forte Brand claim, Charter Oak notified Maglio that its Policy Limit remained available for settlement.  *See* letter from Susan M. Hogan, Esq., ("Ms. Hogan"), counsel for Charter Oak, to Joseph L. Turchi, Esq. ("Mr. Turchi"), personal counsel for Maglio, a copy of which is attached hereto as Exhibit "21"; *see also* email sent by Stewart J. Greenleaf, Jr., Esq. ("Mr. Greenleaf"), local counsel for Charter Oak, to Ronald L. Daugherty, Esq. ("Mr. Daugherty"), also personal counsel for Maglio, dated February 29, 2012, a copy of which is attached hereto as Exhibit "22"; and letter from Ms. Hogan to Mr. Turchi, dated April 24, 2012, a copy of which is attached hereto as Exhibit "23."  In its communications with Maglio, Charter Oak stated that "because the first verdict entered against Maglio in the [Underlying] Lawsuit (which includes an award of punitive damages) is not covered under the [Charter Oak Primary Policy] or [the AGLIC Policy], Maglio must contribute towards any settlement reached on its behalf."  *See* Exhibit "23"; *see also* Exhibit "22" (Charter Oak "is

interested in resolving the underlying settlement proposal by Leonetti's, but only if Maglio is also going to participate and contribute monies over and above the policy limit of $1 million").

47.     In addition, Charter Oak repeatedly confirmed to Maglio that it would defend Maglio through post-trial motions and on appeal.  To this end, Charter Oak retained appellate counsel to evaluate Maglio's chance of success on appeal, and to defend Maglio through appeal. Charter Oak also agreed to pay the cost of an appeal bond up to and including the amount of the Policy Limit and to assist Maglio with obtaining an appeal bond for the balance of the verdicts entered against it. *See, e.g.*, Exhibit "23."

48.     Charter Oak filed its complaint in the Equitable Interpleader Action on January 26, 2012.  A copy of its complaint in the Equitable Interpleader Action is attached hereto as Exhibit "24."  On February 7, 2012, Charter Oak filed a motion to deposit its Policy Limit, plus post-judgment interest accrued through the date of the filing of its Complaint in the Equitable Interpleader Action (hereinafter referred to as "the Funds") with the court in the Equitable Interpleader Action, so as to stop the running of post verdict interest and so as to further evidence its good faith efforts to resolve the Claims.  Charter Oak's motion to deposit the Funds was granted on March 5, 2012, and Charter Oak thereafter deposited the Funds ($1,018,497.25) into an interest bearing account.  Copies of Charter Oak's Motion to Deposit funds and the Order granting its motion are attached hereto as Exhibits "25" and "26", respectively.

49.     Maglio filed its post-trial motion on the Maglio Brand claim on October 12, 2011. Maglio's post trial motion on the Maglio Brand claim was denied on March 15, 2012.

50.     Maglio filed its post-trial motion on the Forte Brand claim on January 3, 2012. Maglio's post trial motion on the Forte Brand claim was initially denied on March 15, 2012, but

the trial court vacated that order on March 19, 2012.  However, the trial court ultimately denied

Maglio's post-trial motion on the Forte Brand claim on May 4, 2012.

## The Settlement Agreement and Assignment of Rights

51.    On or about May 8, 2012, despite the fact that Charter Oak had tendered its Policy

Limit, agreed to defend Maglio through appeal, subject to a reservation of its rights, and to pay

the premium on an appeal bond up to the amount of the Funds, and to assist Maglio with

obtaining a reduction of security for the balance of the general verdicts, Leonetti's and Maglio

entered into a Settlement Agreement and Assignment of Rights ("the Agreement"), a copy of

which is attached hereto as Exhibit "27."  Under the Agreement, Maglio, among other things,

waived its right to appeal any judgment entered against it in the Underlying Action, assigned all

of its rights to Leonetti's, stipulated to the entry of judgment in Leonetti's' favor in the amount of

$4,500,000 (an amount significantly greater than the jury verdicts entered against it in the

Underlying Action), agreed to pay $250,000 to Leonetti's pursuant to certain conditions set forth

in the Agreement, and stipulated to facts that are not only contrary to the record but are a blatant

attempt to recast the verdicts and Charter Oak's conduct so as to pave the way to argue that

Charter Oak must indemnify Maglio for the $4,500,000 in stipulated damages.

52.    Charter Oak was not a party to nor did it consent to the Agreement.  In fact, when

Maglio's counsel informed Charter Oak that it may assign its rights to Leonetti's, Charter Oak's

counsel advised Maglio that "there may be consequences under the Travelers policy that Maglio

and/or Leonetti's should consider."  *See* email dated May 2, 2012, from Ms. Hogan to Mr. Turchi

a copy of which is attached hereto as Exhibit "28."  When Maglio's counsel responded by asking

whether Charter Oak would contest an assignment by Maglio to Leonetti's, Charter Oak's

counsel stated that Charter Oak was "not in a position to object to or contest an agreement that

has yet to be reached between Maglio and Leonetti's, and to which [Charter Oak] is not or will not be a party" and that Charter Oak "is simply reiterating the fact that any agreement reached between Maglio and Leonetti's may (or may not) have consequences under the [Charter Oak] policy and/or the applicable law, and that it reserves all of its rights concerning any such agreement." *See* email dated May 3, 2012, from Ms. Hogan to Mr. Turchi, a copy of which is attached hereto as Exhibit "29."

53.    Maglio did not provide Charter Oak with a copy of the Agreement before it was executed by Maglio and Leonetti's, instead, provided Charter Oak with a copy of the Agreement on May 8, 2012, *after* the Agreement had been executed by the parties earlier that day. *See* email from Justin Proper, Esquire, counsel for Leonetti's, to Ms. Hogan dated May 8, 2012, a copy of which is attached hereto Exhibit "30."

54.    Maglio filed a Motion to Approve the Entry of a Consent Judgment ("Motion to Enter Consent Judgment") in the Underlying Action on or about May 10, 2012. A copy of the Motion to Enter Consent Judgment is attached hereto as Exhibit "31." Leonetti's filed a Notice of Non-Opposition to the Motion to Enter Consent Judgment ("Notice of Non-Opposition") that same day. A copy of Leonetti's Notice of Non-Opposition is attached hereto as Exhibit "32."

55.    Charter Oak filed an Emergency Petition to Intervene ("Emergency Petition") in the Underlying Action on May 18, 2012, requesting that the court grant it leave to file an opposition to Maglio's Motion to Enter Consent Judgment. A copy of the Charter Oak's Emergency Petition is attached as Exhibit "33." Charter Oak's Emergency Petition was granted on June 14, 2012. The hearing on Maglio's Motion to Enter Consent Judgment is scheduled for July 24, 2012.

56.     Maglio filed a Motion for Release of Funds Deposited by the Charter Oak Fire Insurance Co. ("Motion to Release Funds") in the Equitable Interpleader Action on or about May 9, 2012.  Leonetti's filed a Notice of Non-Opposition to Maglio's Motion for Release of Funds "Notice of Non-Opposition") on or about May 12, 2012.  Copies of Maglio's Motion to Release Funds and Leonetti's Notice of Non-Opposition are attached hereto as Exhibits "34" and "35," respectively.

57.     Charter Oak filed an Opposition to Motion to Release Funds ("Opposition to Motion to Release Funds") in the Equitable Interpleader Action on or about May 29, 2012.  However, on June 28, 2012, Charter Oak filed its Praecipe to Withdraw Opposition, a copy of which is attached hereto as Exhibit "36."  Charter Oak expects that the Funds will be released to Leonetti's in due course.

58.     An actual controversy exists between the parties concerning the extent, if any, of Charter Oak's obligation to indemnify Maglio for the verdict entered against Maglio on the Maglio Brand claim under the Charter Oak Primary Policy.  Each of the defendants has an interest in the declaration of Charter Oak's rights under the Charter Oak Primary Policy.

59.     Pursuant to 28 U.S.C. § 2201, the Court may declare the rights and other legal relations of the parties.

## COUNT ONE

**Declaratory Judgment Against Maglio—The General Verdict Entered Against Maglio On The Maglio Brand Claim Is Not Covered Under the Charter Oak Primary Policy**

60.     Charter Oak repeats and incorporates the allegations of paragraphs 1 through 59 as if fully set forth herein.

61.     Maglio has the burden of proving that Charter Oak has an obligation to indemnify it for the general verdict entered against it on the Maglio Brand claim.

62.     Charter Oak has no duty to indemnify Maglio for the verdict entered against Maglio in the Underlying Action on the Maglio Brand claim, as the verdict was predicated on a single count of unfair competition, no component of which was for trade libel, or any other enumerated offense under Coverage B, and was based on evidence that Maglio knowingly and intentionally misrepresented to its customers that its stromboli products had not changed, resulting in an award of punitive damages, which are not covered under the Charter Oak Primary Policy.

63.     Accordingly, Charter Oak is entitled to a judicial declaration that it has no duty to indemnify Maglio for the general verdict entered against it on the Maglio Brand claim in the Underlying Action.

WHEREFORE, Charter Oak requests that this Court find and declare that Charter Oak has no duty to indemnify Maglio for the general verdict entered against it on the Maglio Brand claim in the Underlying Action.

## COUNT TWO

**Declaratory Judgment Against Maglio—The Exclusion for Knowing Violations of Rights of Another Precludes Coverage for the General Verdict Entered Against Maglio on the Maglio Brand Claim**

64.     Charter Oak repeats and incorporates the allegations of paragraphs 1 through 59 as if fully set forth herein.

65.     The Charter Oak Primary Policy contains an exclusion for Knowing Violation of Rights of Another, which excludes from coverage:

> "Personal injury," "advertising injury" or "web site injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal injury," "advertising injury" or "web site injury."

66.     To the extent that some or all of the general verdict entered against Maglio on the Maglio Brand claim is covered under the Charter Oak Primary Policy (which Charter Oak expressly denies), such damages are excluded under the Charter Oak Primary Policy, as the evidence presented in the Underlying Action establishes that such damages were caused by or at the direction of Maglio with the knowledge that the act would violate Leonetti's rights and inflict such damages.

67.     Accordingly, Charter Oak is entitled to a judicial declaration that the Knowing Violations of Rights of Another Exclusion precludes coverage for the general verdict entered it on the Maglio Brand claim in the Underlying Action.

WHEREFORE, Charter Oak requests that this Court find and declare that Charter Oak has no duty to indemnify Maglio for the general verdict entered against it on the Maglio Brand claim in the Underlying Action.

## COUNT THREE

**Declaratory Judgment Against Maglio—The Exclusion for Material Published with Knowledge of Falsity Precludes Coverage for the General Verdict Entered on the Magio Brand Claim**

68.     Charter Oak repeats and incorporates the allegations of paragraphs 1 through 59 as if fully set forth herein.

69.     The Charter Oak Primary Policy contains an exclusion for Material Published with Knowledge of Falsity, which excludes from coverage:

> "Personal injury," "advertising injury" or "web site injury" arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity.

70.     To the extent that some or all of the general verdict entered against Maglio on the Maglio Brand claim is covered under the Charter Oak Primary Policy (which Charter Oak

expressly denies), such damages are excluded under the Charter Oak Primary Policy, to the extent that the evidence presented in the Underlying Action establishes that such materials were published by or at the direction of Maglio with knowledge of its falsity.

71.     WHEREFORE, Charter Oak Fire Insurance Company requests that this Court find and declare that Charter Oak has no duty to indemnify Maglio for the verdict entered against it on the Maglio Brand claim in the Underlying Action.

## COUNT FOUR

**Declaratory Judgment Against Maglio—The Exclusion for Quality or Performance of Goods—Failure to Conform to Statements Precludes Coverage for the General Verdict Entered on the Maglio Brand Claim**

72.     Charter Oak repeats and incorporates the allegations of paragraphs 1 through 59 as if fully set forth herein.

73.     The Charter Oak Primary Policy contains an exclusion for Quality or Performance of Goods—Failure to Conform to Statements Exclusion, which excludes from coverage:

> "Advertising injury" or "web site injury" arising out of a breach of the failure of goods, products or services to conform with any statement of quality or performance made in the course of advertising your goods, products or services.

74.     To the extent that some or all of the general verdict entered against Maglio on the Maglio Brand claim is covered under the Charter Oak Primary Policy (which Charter Oak expressly denies), such damages are excluded under the Charter Oak Primary Policy, to the extent that the evidence presented in the Underlying Action establishes some or all of the general verdict was the result of advertising injury arising out of a breach of the failure of goods or services to conform with any statement of quality or performance made by Maglio in the course of advertising its goods, products or services.

WHEREFORE, Charter Oak requests that this Court find and declare that Charter Oak has no duty to indemnify Maglio for the general verdict entered against it on the Maglio Brand claim in the Underlying Action.

## COUNT FIVE

**Declaratory Judgment Against Maglio—The Exclusion for Unauthorized Use of Another's Name or Product Precludes Coverage for the General Verdict on the Maglio Brand Claim**

75.    Charter Oak repeats and incorporates the allegations of paragraphs 1 through 59 as if fully set forth herein.

76.    The Charter Oak Primary Policy contains an exclusion for Unauthorized Use of Another's Name or Product Exclusion, which excludes from coverage:

> "Personal injury", "advertising injury" or "web site injury" arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar activities that mislead another's potential customers.

77.    To the extent that some or all of the general verdict entered against Maglio on the Maglio Brand Claim is covered under the Charter Oak Primary Policy (which Charter Oak expressly denies), such damages are excluded to the extent that the evidence presented in the Underlying Action establishes that such damages were caused by the unauthorized use of another's name or product, or any other similar activities that mislead another's customers.

WHEREFORE, Charter Oak requests that this Court find and declare that Charter Oak has no duty to indemnify Maglio for the verdict entered against on to the Maglio Brand claim in the Underlying Action.

## COUNT SIX

**Declaratory Judgment Against Maglio—Maglio's Breach of the Cooperation Provisions Contained in the Charter Oak Primary Policy Relieves Charter Oak of any Obligation to Indemnify Maglio for the General Verdict on the Maglio Brand Claim**

78.     Charter Oak repeats and incorporates the allegations of paragraphs 1 through 59 as if fully set forth herein.

79.      Charter Oak pleads Count Six in the alternative to Count One.

80.     Charter Oak has complied fully with its obligations to Maglio in connection with the Underlying Action under the Charter Oak Primary Policy, and under the law.

81.     Pursuant to the Charter Oak Primary Policy, Maglio was required to, among other things, cooperate with Charter Oak in connection with its investigation, defense and settlement of the Claims as set forth herein.

82.     Maglio breached the cooperation provisions contained in the Charter Oak Primary Policy when it executed the Agreement, to which Charter Oak was not a party and to which Charter Oak did not consent.

83.     Maglio's breach was a substantial breach of the cooperation provisions contained in the Charter Oak Primary Policy.

84.     Maglio lacks justifiable excuse for its breach of the cooperation provisions contained in the Charter Oak Primary Policy.

85.     Even though Charter Oak is not bound by the Agreement, Maglio's breach of the cooperation provisions is prejudicial to Charter Oak, as Maglio, by entering into the Agreement, appears to be attempting to create coverage for the Maglio Brand general verdict under the Charter Oak Primary Policy where it does not exist, and appears to be attempting to create a record that Charter Oak has an obligation to Maglio in addition to payment of its Policy Limit,

despite the fact that Charter Oak has met, and exceeded, its obligation under the Charter Oak Primary Policy, and under the law.

86.     Because Maglio substantially breached the cooperation provisions and such breach prejudiced Charter Oak, Charter Oak has no obligation to indemnify Maglio under the Charter Oak Primary Policy should any such obligation exist (which Charter Oak specifically denies).

87.     Charter Oak is entitled to a judicial declaration that it has no obligation to indemnify Maglio for the verdict entered against it on the Maglio Brand claim as a result of its breach of the cooperation provisions contained in the Charter Oak Primary Policy.

WHEREFORE, Charter Oak requests that this Court find and declare that Maglio substantially breached the cooperation provisions in the Charter Oak Primary Policy, that Charter Oak was substantially prejudiced as a result of Maglio's breach, and that Charter Oak has no duty to indemnify Maglio in for the general verdict entered against it on the Maglio Brand claim in the Underlying Action.

Respectfully submitted,

Francis J. Deasey
Deasey Mahoney Valentini & North, Ltd.
1601 Market Street, Suite 3400
Philadelphia, PA 19103
Office:  (215) 587-9400
Email:  fjdeasey@dmvnlaw.com
*Attorneys for Charter Oak Fire Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that on July 12, 2012, I caused a copy of the foregoing Complaint to be

served by first class mail, postage prepaid to:

> James W. Christie, Esquire
> Rex F. Brien, Esquire
> Christie, Pabarue, Mortensen and Young, P.C.
> A Professional Corporation
> 1880 JFK Blvd. 10th Floor
> Philadelphia, Pennsylvania 19103
> jwchristie@cpmy.com
> RFBrien@cpmy.com
> *Counsel for American Guarantee*
> *and Liability Insurance Company*

**and to:**

> Joseph L. Turchi, Esquire
> Salmon Ricchezza Singer & Turchi LLP
> 1601 Market Street, Suite 2500
> Philadelphia, Pennsylvania 19103
> jturchi@srstlaw.com
> *Counsel for Maglio Fresh Food d/b/a Maglio's Sausage Company*

_____
Francis J. Deasey