

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Charter Oak Insurance Co., | : | CIVIL CASE |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| Maglio Fresh Food d/b/a Maglio's | : | |
| Sausage Co., et al., | : | |
| Defendants. | : | NO. 12-3967 |

**FILED**

OCT 2 4 2013

MICHAEL E. KUNZ, Clerk
By_____Dep. Clerk

## MEMORANDUM OF LAW RE MOTIONS FOR SUMMARY JUDGMENT

**Baylson, J.**                                                      October 24 , 2013

### I.    Introduction

This action involves a coverage dispute between two insurers, Charter Oak Insurance

Company ("Charter Oak"), issuer of primary coverage, and American Guarantee and Liability

Insurance Company ("American Guarantee"), issuer of an excess and umbrella policy, and their

insured, Maglio Fresh Food ("Maglio").

On July 12, 2012, Charter Oak filed a Complaint. ECF 1. Charter Oak amended its

Complaint on August 27, 2012, and included American Guarantee as a "nominal Defendant" in

its Amended Complaint, despite a lack of adverse interests between Charter Oak and American

Guarantee. ECF 6. Charter Oak and American Guarantee seek a declaratory judgment that the

claims against Maglio by Leonetti's, filed with the Court of Common Pleas of Philadelphia

County, are not covered under these policies. ECF 40 ¶ 40. Maglio asserted counterclaims

against Charter Oak, seeking coverage and making claims of bad faith, and asserted cross claims

against American Guarantee also seeking coverage and alleging bad faith. ECF 10.

Charter Oak has filed a Motion for Summary Judgment, ECF 40, and American

Guarantee filed a Cross Motion for Summary Judgment, both seeking a declaratory judgment of

non-coverage, ECF 42. This Court will **GRANT** the Motions for Summary Judgment filed by

Charter Oak and American Guarantee, as to the claims made against Maglio in the underlying

litigation, and will enter a declaratory judgment that Charter Oak and American Guarantee have

no obligation to cover the claims against Maglio.

## II.    Background

In its Amended Complaint, Charter Oak alleges that the Charter Oak policy does not

cover the claims against Maglio because the injury suffered by the plaintiff in the underlying

action does not constitute an "advertising injury" under the policy, and even if it did, express

exclusions in the policy bar the claim. Id. ¶ 2.

On October 5, 2012, Maglio filed an Answer, and set forth counterclaims against Charter

Oak and cross claims against American Guarantee. ECF 10. Maglio filed Amendments to its

Answer on November 19, 2012. ECF 21& 22. Maglio contended that the Charter Oak policy

covers the claims against it and, further, that Charter Oak could no longer contest coverage

because it had previously tendered the policy limit toward settlement of *all* claims (ECF 10)

(Ans., Counterclaim, and Cross Claim) ¶¶ 91, 95-100. Maglio additionally alleged that Charter

Oak breached its contract with Maglio and acted in bad faith – under the common law and

Pennsylvania statutory law – by failing to provide Maglio with independent counsel when

Maglio's and Charter Oak's interests conflicted and by unreasonably failing to settle the

underlying action within the policy limits. Id. ¶¶ 92, 104, 113-127; ECF 12. Maglio similarly

alleged that American Guarantee breached its contract with Maglio and also acted in bad faith

under Pennsylvania statutory law. Id. ¶¶ 128-144; ECF 21.

On December 5, 2012, Charter Oak filed its Answer to Maglio's Counterclaims. ECF 23.

Among other contentions, Charter Oak asserted that it could not be held liable for the conduct of

Maglio's counsel in the underlying trial. Id. ¶ 14. American Guarantee filed an Answer and

Affirmative Defenses to Maglio's Amended Cross Claim on December 10, 2012, in which it

2

denied that it lacked a reasonable basis for denying coverage for Maglio's claims and affirmatively asserted that its policy does not cover Maglio's claims. ECF 25 ¶¶ 19-22.

## III.    Procedural History

### A. The Underlying Lawsuit

The claims against Maglio arise from a suit filed in the Court of Common Pleas of Philadelphia County initiated by Leonetti's, a supplier and competitor of Maglio's, which resulted in two jury verdicts against Maglio (the "underlying litigation"). This Court sets forth an overview of those proceedings here, but also attaches a thorough chronology of the underlying litigation in light of their significance to the resolution of the present dispute.[1]

On March 8, 2010, Leonetti's initiated the litigation against Maglio based on two allegations related to Maglio's sale of frozen stromboli. ECF 41 (Def.'s Resp. to Pl.'s Mot. for Summ. J. and Cross Mot. for Summ. J.), Ex. 1. First, Leonetti's alleged that Maglio impermissibly sold an inferior stromboli product under Leonetti's brand name, Forte, after the parties terminated their private label agreement (the "Forte brand claim"), while also denying Leonetti's ownership of the Forte. Secondly, Leonetti's claimed that Maglio sold its own brand of stromboli in boxes that reflected Leonetti's product information, not the product information of the actual manufacturer, American Kitchen Delights (the "Maglio brand claim"). Leonetti's sought relief under theories of tortious interference, unfair competition, trade libel, breach of contract, negligent misrepresentation, and unjust enrichment. ECF 6 (Am. Compl.), Ex. 5.

Maglio tendered the claims forming the basis of the Underlying Action to Charter Oak and, on May 4, 2010, Charter Oak sent a reservation of rights letter in which it agreed to defend Maglio subject to a reservation of its rights under the policy. Id. ¶ 28 & Ex. 4.

---

[1] The chronology is attached as Appendix A. This Court sent a proposed chronology to the parties in advance of oral argument and Appendix A reflects comments from counsel.

The state court dismissed Leonetti's causes of action for negligent misrepresentation and unjust enrichment. The remaining claims for unfair competition, trade libel, and tortious interference proceeded to trial. Id. 6 ¶ 3. After nine days of trial, the trial court declared a mistrial as to the Forte brand claim due to a hung jury. Id. ¶ 34; ECF 10 (Ans., Counterclaim, and Cross Claim) ¶ 34. The Maglio brand allegations proceeded to verdict before the same jury under just one cause of action: unfair competition. On October 3, 2011, the jury returned a general verdict against Maglio and awarded compensatory damages of $2,000,000 and punitive damages of $555,000. Id., Ex. 15.

In December 2011, Leonetti's retried the Forte brand claim on a single count of unfair competition. During the second trial, Maglio requested that Charter Oak make available its $1 million policy limit for settlement purposes. Id. ¶ 44, Ex. 18. On December 22, 2011 Charter Oak did make available those funds, although Maglio's settlement efforts did not succeed at that time. Id. ¶ 45, Ex. 19. On the same day, the jury returned a general verdict against Maglio and awarded Leonetti's $660,000 of compensatory damages on the Forte brand claim. Id., Ex. 20.

Leonetti's and Maglio ultimately entered a settlement agreement on May 8, 2012 for $4.5 million pursuant to which Maglio assigned its rights under the Charter Oak policy and the American Guarantee policy to Leonetti's. Id., Ex. 27; ECF 10 (Ans., Counterclaim, and Cross Claim), Ex. 4. Charter Oak was not involved in the settlement negotiations.

On May 10, 2012 Maglio filed a Motion to Approve the Entry of a Consent Judgment and Leonetti's filed a Notice of Non-Opposition to Maglio's motion. ECF 6, Exs. 31-32. On May 18, 2012, Charter Oak filed an Emergency Petition to Intervene, requesting leave to file an opposition to Maglio's motion. ECF 6 (Am. Compl.), Ex. 33. The court granted Charter Oak's

4

petition and denied Maglio's motion following a July 24, 2012 hearing. Id., Ex. 34. The Court is unaware of any further proceedings in the underlying litigation.

## B. Charter Oak's Interpleader

On January 26, 2012, prior to this federal suit, Charter Oak filed a separate equitable interpleader action with the Court of Common Pleas of Philadelphia County. Id., Ex. 24. On February 7, 2012, Charter Oak filed a motion to deposit the policy limit plus post-judgment interest with the court in order to halt the accrual of post-judgment interest and demonstrate a good faith effort to settle with Leonetti's. The court granted Charter Oak's motion on March 5. Id., Ex. 25. On May 9, 2012, Maglio filed a Motion for Release of Funds and Leonetti's filed a Notice of Non-Opposition to Maglio's motion. Id., Exs. 35-36. Charter Oak initially opposed Maglio's motion but withdrew its opposition on June 28, 2012. Id. ¶ 58. On July 9, 2013, the court issued an order directing Charter Oak to distribute the full amount of the deposit to Leonetti's. ECF 40 (Pl.'s Mot. for Summ. J.) ¶ 36. The funds were released to Leonetti's on July 16, 2012. ECF 10 (Ans., Counterclaim, and Cross Claim) ¶ 58.

## C. This Federal Lawsuit

On July 12, 2012, before the funds were released by the court in the Equitable Interpleader Action, Charter Oak initiated the present litigation, seeking a declaratory judgment of noncoverage. On October 5, 2012, Maglio filed an Answer, and set forth counterclaims against Charter Oak and cross claims against American Guarantee. ECF 10. Maglio alleged that both policies covered the claims against it and that both insurance companies breached their contracts with Maglio and acted in bad faith. Id. American Guarantee filed an Answer and Affirmative Defenses to Maglio's Amended Answer on December 10, 2012, asserting that its policy does not cover Maglio's claims. ECF 25 ¶¶ 19-22.

5

This Court issued a Scheduling Order on January 23, 2013, noting that counsel agreed to decide coverage issues first, but disagreed as to the scope of the coverage issues and the discovery related to those issues. ECF 28. The parties then submitted briefs on the scope of discovery. ECF 29-34. On March 14, 2013, this Court ordered that the parties should take no additional discovery at that time because the extensive record of the underlying action would suffice to determine the coverage issues. ECF 36.

On May 6, 2013, Charter Oak filed a Motion for Summary Judgment seeking a declaratory judgment of no coverage. ECF 40. On May 22, Maglio filed a Motion for Summary Judgment seeking a declaratory judgment that the policies cover the claims. ECF 40. On June 21, 2013, American Guarantee filed a Cross Motion for Summary Judgment. ECF 42. This Court held oral argument on the summary judgment motions on September 25, 2013.

## IV.    The Policies

### A.  The Charter Oak Policy

The policy issued by Charter Oak provides coverage for damages resulting from advertising injury, subject to the policy limit of $1 million, and subject to a number of exclusions. The policy also establishes that Charter Oak will have "the right and duty to defend the insured" against any lawsuit seeking those types of damage. ECF 41 (Def.'s Resp. to Pl.'s Mot. for Summ. J. and Cross Mot. for Summ. J.), Ex. 2, CG 00 01 10 01 (Commercial General Liability) at I.1 (Coverage B), III [hereinafter Charter Oak Policy].

The policy, via the corresponding Web Xtend Endorsement, defines "advertising injury" as "injury arising out of one or more of" a list of enumerated offenses. The only enumerated offense that the parties claim to be relevant is subsection (a):

> Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services,

6

> provided that claim is made or "suit" is brought by a person or organization that claims to have been slandered or libeled, or whose goods, products or services have allegedly been disparaged.

Id., CG D2 34 01 05 at 4 [hereinafter Web Extend Endorsement].

The policy also contains express exclusions that may bar coverage even where a claim meets the policy's initial coverage requirements. In particular, the policy bars coverage for any damages resulting from an injury "arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." Charter Oak Policy I.2.b (Coverage B).

### B. The American Guarantee Policy

The American Guarantee policy provides both excess and umbrella insurance. ECF 41, Ex. 3, U-UMB-100BC W (Commercial Umbrella Liability Policy) at I.A-B [hereinafter American Guarantee Policy]. The Coverage A – or excess – portion of the policy provides that American Guarantee will pay damages in excess of the total applicable limits of the underlying insurance. Coverage A incorporates "the terms and conditions of [the] underlying insurance" except where the American Guarantee policy contradicts the underlying insurance policy or where the American Guarantee policy addresses terms and conditions about which the underlying policy is silent. Id. at I.A. Where the underlying insurance does not apply to damages for reasons other than the exhaustion of the policy limits, Coverage A also does not apply. The Coverage B – or umbrella – portion of the policy sets forth independent terms and conditions under which American Guarantee would become liable to the insured. Id. at I.B. By the policy's terms, Coverage B does not apply "to any loss, claim or suit for which insurance is afforded under underlying insurance or would have been afforded except for the exhaustion of the limits of insurance of underlying insurance." Id.

7

Under Coverage B, the American Guarantee policy provides umbrella coverage for "personal and advertising injury." Similarly to the Charter Oak policy, the American Guarantee policy defines "personal and advertising injury" as "injury, including consequential bodily injury, arising out of one or more of" a list of offenses. The alleged offense at issue in the present litigation involves "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." Id. at V.C.10.

American Guarantee expressly excludes coverage for "personal and advertising injury" that either "[a]ris[es] out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity" or "[a]ris[es] out of the failure of goods, products or services to conform with any statement of quality or performance made in your advertisement." Id. at IV.C.5(b), (g). Endorsement No. 3, which modifies the American Guarantee policy, expressly excludes liability for punitive damages. Id., U-UMB-234-A OW (Endorsement No. 3).

## V.    The Parties' Contentions

### A.    Maglio Brand Claim

#### 1.    Charter Oak's Contentions

Charter Oak asserts that it provided a defense for both the Maglio and Forte brand claims, but that it reserved its rights regarding indemnity. With respect to the Maglio brand claim, Charter Oak contends that Maglio cannot meet its burden to show coverage because Loenetti's trial theory and the ultimate verdict do not demonstrate that Leonetti's suffered an "advertising injury" or a "personal injury" under the policy's definitions. Charter Oak points out that the definitions of both "advertising injury" and "personal injury" require that Leonetti's injury arise out of one of the definition's enumerated offenses – specifically, here, that the injury arise out of "[o]ral, written or electronic publication of material that slanders or libels a person or

8

organization or disparages a person's or organization's goods, products or services." Charter

Oak's Motion for Summary Judgment (ECF 40). American Guarantee filed a similar Motion

(ECF 42-1) (Mem. Of Law of Def. American Guarantee in Opp'n to Def.'s Cross Mot. for

Summ. J. and in Supp. of Cross Mot. for Summ. J.) at 16-17. Charter Oak contends that the

record of the underlying action lacks any evidence of disparagement and thus does not constitute

an injury covered by the policy.[2]  ECF 40 (Pl.'s Mot. for Summ. J.) at 23.

Even if the claims meet the definition of personal and advertising injury, Charter Oak

argues that the policy excludes coverage under the Knowledge of Falsity exclusion, which

establishes that the policy does not apply to injury "arising out of oral or written publication of

material, if done by or at the direction of the insured with knowledge of its falsity." Charter Oak

Policy at I.2.b (Coverage B). Charter Oak bases its argument on the testimony of Mr. Taubman

– the Maglio's broker and sales manager – who admitted that it was deceptive for Maglio to

distribute Maglio brand stromboli in Forte brand boxes and acknowledged that he knew as early

as November 28, 2007 that the Maglio boxes were not accurate. ECF 40 (Pl.'s Mot. for Summ.

J.) at 25.

### 2. Maglio's Contentions

Maglio contends that Charter Oak waived its right to contest coverage by failing to timely

file a declaratory action, failing to timely seek intervention, and failing to appeal the denial of

intervention from a final order. Maglio further contends that Charter Oak waived its ability to

challenge coverage under the policy because it partially indemnified Maglio for the Maglio

brand verdict by tendering its policy limit for "all claims in the lawsuit" without reserving any

---

[2] Charter Oak points out that the trade libel charge – originally included in the complaint – was later withdrawn after the jury could not reach a verdict with respect to the Forte brand claim. Thus, the jury did not consider any claim under a libel, trade libel, slander, or disparagement cause of action.

rights.[3]  Given that the Forte brand verdict was only for $660,000, the payment by Charter Oak

not only covered that claim in full, but the $1 million policy limit paid by Charter Oak included

an additional $340,000, which Maglio argues implied payment for the Maglio brand claim, and

therefore the payment acknowledges coverage.  ECF 41-1 (Br. in Opp'n to Pl.'s Mot. for Summ.

J. and in Supp. of Def.'s Mot. for Summ. J.) at 35.  Thus, Maglio asks this Court to deem the

payment an act evidencing recognition of liability and an inferred waiver of Charter Oak's prior

reservation of rights as to indemnity.  Id. at 51.

Even if Charter Oak's defenses to coverage are not waived or estopped, Maglio contends

that the general verdict supports a finding of personal and advertising injury under the policy.

Maglio argues that the jury verdict supports a finding that Maglio disparaged Leonetti's and/or

its products both because (1) Leonetti's argued at trial that Maglio disparaged it and/or its

products by distributing an inferior stromboli in packaging that contained Leonetti's product

information, which could have caused customers to think Leonetti's had manufactured the

inferior product,[4] id. at 21-22, 45, and (2) the broad unfair competition charge that the Court

submitted to the jury encompassed Leonetti's disparagement allegations and thus prevents

Charter Oak from showing that the jury did not find disparagement, id. at 22-24.[5]

Maglio further argues that the Knowledge of Falsity exclusion has no application because

it requires that the publication be done "at the direction of the insured" and Anthony Maglio, the

---

[3] Maglio points out that both the Forte brand claim and the Maglio brand claim arose in the same lawsuit.  ECF 44 at 13.
[4] Maglio argues that, because consumers could have mistakenly thought the packaging came from Leonetti's by looking up the USDA establishment number online or by noticing that the new, Maglio boxes reflected the information that had not changed from the old, Forte brand boxes.  ECF 44 at ¶ 13.
[5] Maglio contends that Charter Oak has the initial burden of showing that the policy does not cover the claims.  ECF 41-1 (Br. in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Mot. for Summ. J.) at 19-20.  Even if the Court finds that Maglio has the burden to prove that the verdicts gave rise to covered claims, Maglio insists that Charter Oak's motion for summary judgment still must be denied because an issue of fact would exist as to what the jury found and "an entire new trial with new jury interrogatories would be necessary to determine the exact evidentiary basis of the verdicts."  Id. at 38.

president of Maglio, testified that he believed the labels were accurate. Id. at 31. Maglio argues that Charter Oak has not put forth any evidence that Mr. Taubman, Maglio's broker and sales manager, acted at the direction of Maglio. Id.

With respect to the umbrella policy provided by American Guarantee, Maglio argues that because American Guarantee chose to rely on Charter Oak to protect its interests during the underlying suit that Charter Oak should be bound by Charter Oak's supposed waiver. Id. at 38. Moreover, Maglio contends that American Guarantee's policy is derivative of Charter Oak's policy, and that therefore any covered claim under the Charter Oak policy also would be covered by the American Guarantee policy and therefore incorporated by reference its arguments in support of coverage under the Charter Oak policy. Id. at 53.

### 3. American Guarantee's Contentions

American Guarantee argues that the verdict against Maglio does not give rise to a covered claim under the umbrella policy because its definition of "personal and advertising injury," like that of the Charter Oak policy, requires that Maglio's activity constitute "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services." American Guarantee Policy at V.C.10. American Guarantee argues that the evidence pertaining to the Maglio brand claim that Leonetti's presented at trial showed only that Maglio knowingly misrepresented the quality, appearance, and contents of its own products, which was deceptive but not disparaging. ECF 42-1 (Mem. of Law of Def. American Guarantee in Opp'n to Def.'s Cross Mot. for Summ. J. and in Supp. of Cross Mot. for Summ. J.) at 18. American Guarantee contends that Maglio

11

failed to cite any support for its argument that the evidence showed that Maglio disparaged Leonetti's or its products.[6]  Id. at 7.

American Guarantee further contends that, even if the Maglio brand verdict did constitute a personal and advertising injury under its policy, express exclusions would nevertheless bar coverage.  Id. at 20.  The American Guarantee policy bars claims "[a]rising out of the failure of goods, products or services to conform with any statement of quality or performance made" in the advertisement.  American Guarantee Policy IV.C.5(b), (g).  American Guarantee asserts that the heart of Leonetti's claim – that the Maglio brand stromboli did not conform with the package photograph, ingredient statement, and nutritional information – falls squarely within the scope of this exclusion.  ECF 42-1 (Mem. of Law of Def. American Guarantee in Opp'n to Def.'s Cross Mot. for Summ. J. and in Supp. of Cross Mot. for Summ. J.) at 20.  Similarly, the American Guarantee policy denies coverage for injury "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury."  American Guarantee Policy at IV.C.5(b).

The trial evidence, according to American Guarantee, shows that Maglio necessarily knew that its stromboli ingredients and nutritional information changed when it selected a new manufacturer.  ECF 42-1 (Mem. of Law of Def. American Guarantee in Opp'n to Def.'s Cross Mot. for Summ. J. and in Supp. of Cross Mot. for Summ. J.) at 23.  Moreover, Leonetti's USDA labeling expert offered evidence that Maglio knew its ingredient statement was inaccurate and also knew that the USDA had rescinded approval of its labels.  Id. at 11 (citing ECF 40 (Pl.'s

---

[6] American Guarantee disputes Maglio's argument that consumers could have mistaken Leonetti's for the manufacturer of the Maglio brand stromboli based on the purchaser code or similarities to previous Forte boxes. American Guarantee emphasizes that Leonetti's never argued consumer confusion and the evidence supports the opposite finding:  that consumers rarely know who the manufacturer of stromboli is.  Id.  American Guarantee notes that the trial court instructed the jury to disregard Leonetti's due diligence and marketing expert's belief that Leonetti's was harmed by interaction between Aramark and Maglio "when [Aramark] never knew that Leonetti's was the prior manufacturer."  ECF 42-1 (Mem. of Law of Def. American Guarantee in Opp'n to Def.'s Cross Mot. for Summ. J. and in Supp. of Cross Mot. for Summ. J.) at 9 (citing ECF 40 (Pl.'s Mot. for Summ. J.), Ex. F).

Mot. for Summ. J.), Ex. F (expert testimony)).  As evidence of Maglio's knowledge, American Guarantee cites the trial testimony of Mr. Taubman, who conceded that the Maglio brand stromboli boxes did not accurately represent the product within and conceded that Maglio misled the public by continuing to use the Maglio boxes.[7]

## B. Forte Brand Claim

### 1. Charter Oak's Contentions

Charter Oak acknowledges that the Forte brand trial involved some allegations that Maglio sold Forte brand stromboli that was manufactured by a party other than Leonetti's even while Leonetti's was also selling Forte brand stromboli. ECF 40 (Pl.'s Mot. for Summ. J.) at 30. Nevertheless, Charter Oak argues that the evidence still does not amount to an advertising injury or a personal injury under the policy.  As with the Maglio brand claim, Charter Oak argues that Maglio's actions did not fall into one of the enumerated categories of offenses, as required by the policies' definitions.[8] Id. at 28.

In the alternative, Charter Oak seeks a judgment declaring that the distribution of funds via an equitable interpleader action in state court should discharge any further obligation it may have had under the Charter Oak policy since it has reached the policy limit. ECF 40 (Pl.'s Mot. for Summ. J.) ¶ 40.

---

[7] American Guarantee highlights Mr. Maglio's testimony during the Maglio brand trial, which showed that Mr. Taubman acted as Maglio's sales manager, and was in charge of sales and ordering both stromboli product and the boxes for the product.  Mr. Maglio also testified that Mr. Taubman was authorized to act, and did act, on Maglio's behalf.  ECF 45 at 7.  The evidence showed that Mr. Taubman corresponded with American Kitchen Delights and Maglio customers on Maglio letterhead.  ECF 45 at 8 & Ex. B.

[8] Charter Oak acknowledges that Maglio's employee, Mr. Taubman, may have disparaged Leonetti's in a November 5, 2009 letter. ECF 40 (Pl.'s Mot. for Summ. J.), Ex. M.  Nevertheless, Charter Oak argues that the record lacks any evidence that the letter was sent in the course of advertising the Forte brand products which were produced under private label agreement for Maglio since the only advertising-based statements in that letter related to the Maglio brand products.

## 2. Maglio's Contentions

Maglio argues that Charter Oak has waived its right to contest coverage of the Forte

brand claim because Charter Oak sent various letters acknowledging allegations sounding in

trade libel. See, e.g., ECF 41-1 at 34 (Maglio's Resp. to Pl.'s Mot. for Summ. J. and Cross Mot.

for Summ. J.).[9] Maglio also relies on statements in conference made by Robert Foster –

Maglio's counsel, appointed by Charter Oak – that "there are other separate claims which can

fall under the general definition of unfair competition generally, such as … trade libel."

According to Maglio, those statements, coupled with the fact that the trial court then denied

Maglio's Motion for nonsuit on both unfair competition and trade libel, demonstrate that the

conduct trade libel was the basis of the jury's verdict for the Forte brand claim. Id. at 34 (citing

Ex. 13 (Tr. of Sept. 28, 2011 at 15-16) (denying motion for nonsuit)).

Maglio also contends that the Forte brand claim falls within the policy's coverage,

arguing that the claim is based on an injury arising out of Maglio's disparagement of Leonetti's

and its Forte brand and thus constitutes an "advertising injury" or "personal injury" under

---

[9] In support of its arguments, Maglio relies upon two reservation of rights letters sent to Maglio from Charter Oak. However, these letters show that Charter Oak only acknowledged that certain allegations made by Leonetti's could potentially fall within the scope of the policy. ECF 41, Ex. 4 (May 4, 2010 letter) ("The allegations in Count IV of the complaint allege damages for Trade Libel which Maglio Brothers could be legally obligated to pay because of a 'personal injury' caused by an offense arising out of your business."), Ex. 6 (June 22, 2011 letter) ("We specifically reassert and remind Maglio that the allegations in the amended complaint that allege damages for Trade Libel which Maglio could by legally obligated to pay are covered under the policy as a 'personal injury' caused by an offense arising out of your business."). Furthermore, Maglio ignores that Charter Oak clearly continued to reserve its rights to contest coverage in those same letters. ECF 41, Ex. 4 (May 4, 2010 letter) (stating that Charter Oak agrees to "defend and indemnify [Maglio] in this matter up to the primary policy's limit …, subject to this reservation of rights" and asserting that "[Charter Oak] reserves all rights to decline an obligation under Coverage B."), Ex. 6 (June 22, 2011 letter) ("Travelers reserves all rights to decline an obligation to indemnify Maglio for any damages awarded under those counts.").

Maglio also relies upon another letter that Charter Oak sent to Maglio, also on June 22, 2011, in which Charter Oak agreed to tender the policy limit for settlement purposes. The letter states: "Charter Oak is informed that, at the ongoing trial in the Lawsuit, Plaintiff limited the basis of its unfair competition claim to statements regarding the ownership of the Forte brand, such that the only remaining basis for [Leonetti's] claim would be trade libel." ECF 41, Ex. 21. Upon the Court's independent review of the state court trial record, however, it is clear that the potential basis for Leonetti's Forte brand claim was not so limited. Moreover, given Charter Oak's express statement that it tendered the policy limit for the purpose of settlement and the fact that Charter Oak sent a subsequent reservation of rights letter on the very same day, this letter did not sufficiently waive Charter Oak's clear intent to reserve its rights to contest coverage.

14

Charter Oak's policy. ECF 41-1 (Br. in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Mot. for Summ. J.) at 35.

### 3. American Guarantee's Contentions

American Guarantee explains that its duty to pay under its policy is conditioned upon a determination of the applicability and/or the exhaustion of the Charter Oak policy. ECF 42-1 (Mem. of Law of Def. American Guarantee in Opp'n to Def.'s Cross Mot. for Summ. J. and in Supp. of Cross Mot. for Summ. J.) at 24-25. American Guarantee thus argues that its policy does not cover the Forte brand verdict because the Forte brand judgment is within the $1 million limit of the Charter Oak policy, Charter Oak defended Maglio throughout the underlying action, and the Forte brand verdict was paid with funds interpleaded by Charter Oak. Id. at 26.

## IV. Legal Standard

The standards by which a court decides a summary judgment motion do not change when the parties file cross-motions. Hanna v. State Farm Fire & Cas. Co., CIV.A.06-3242, 2007 WL 2343778 (E.D. Pa. Aug. 13, 2007); Southeastern Pa. Transit Auth. v. Pa. Pub. Util. Comm'n, 826 F.Supp. 1506, 1512 (E.D. Pa. 1993). A district court should grant a motion for summary judgment if the movant can show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." Id.

A party seeking summary judgment always bears the initial responsibility for informing the district court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular

issue at trial, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, the adverse party's response must, "by affidavits or as otherwise provided in this rule [ ] set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party. Anderson, 477 U.S. at 255.

## V.    Discussion

Under Pennsylvania law, an insured bears the initial burden to make a prima facie showing that a claim falls within the policy's grant of coverage. State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (applying Pennsylvania law); see Miller v. Boston Ins. Co., 218 A.2d 275, 277 (Pa. 1966) (stating insured bears initial burden to show claim falls within coverage). If the insured meets that burden, the insurer then bears the burden of demonstrating that a policy exclusion excuses the insurer from providing coverage. Estate of Mehlman, 589 F.3d at 111; see Bishops, Inc. v. Penn Nat'l Ins., 984 A.2d 982, 991 (Pa. Super. Ct. 2009) (asserting insurer bears burden of proving exclusion provision applies). Therefore, Maglio bears the burden to make a prima facie showing that its claims are covered losses, and Charter Oak and American Guarantee bear the burden to show that an exclusion applies. James F. Campenella Constr. Co. v. Great Am. Ins. Co. of New York, Civ. A. No. 10-681, 2010 WL 4812990 (E.D. Pa. Nov. 24, 2010).

16

### A. Coverage

#### 1. The Maglio Brand Claim

Under Pennsylvania law, "'the interpretation of an insurance contract regarding the existence or non-existence of coverage is generally performed by the court.'" Nationwide Mut. Ins. Co. v. CPB Int'l, Inc., 562 F.3d 591, 595 (3d Cir. 2009) (quoting Gardner v. State Farm Fire & Cas. Co., 544 F.3d 553, 558 (3d Cir. 2008)); see also J.C. Penney Life Ins. Co. v. Pilosi, 393 F.3d 356, 363 (3d Cir. 2004) (quoting Standard Venetian Blind Co. v. Am. Empire Ins. Co., 469 A.2d 563, 566 (Pa. 1983)) ("As a threshold matter, '[t]he task of interpreting a contract is generally performed by a court, rather than by a jury.'"). First, the district court examines "the terms of the policy which are a manifestation of the 'intent of the parties.'" CPB Int'l, Inc., 562 F.3d at 595 (quoting Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286, 290 (Pa. 2007)). Second, the court "compare [s] the terms of the policy to the allegations in the underlying claim." CPB Int'l, 562 F.3d at 595.

Maglio contends that the Maglio brand claim constitutes an "advertising injury" or a "personal injury" under the Charter Oak policy because the claim is based on an "injury, arising out of ... [o]ral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services."[10] Web Xtend Endorsement at 4; ECF 41-1 (Br. in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Mot. for Summ. J.) at 30. Maglio similarly contends that the claim also constitutes "personal and advertising injury" under the American Guarantee policy's umbrella insurance, because the claim is based on "injury ... arising out of ... [o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or

---

[10] This memorandum does not address the parties' contentions regarding the definition of advertising or the causal relationship between the injury and the enumerated offense since the Court has determined that the claims do not constitute a covered injury.

organization's goods, products or services." American Guarantee Policy at V.C.10; ECF 41-1 (Br. in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Mot. for Summ. J.) at 53.

In the underlying litigation of the Maglio brand claim, the jury returned a general verdict in favor of Leonetti's, finding Maglio liable for unfair competition, based on the trial judge's instructions limiting the jury to deciding only that cause of action. In Pennsylvania, unfair competition is a broad cause of action that includes numerous activities both covered (e.g., trade libel) and uncovered by the policies. See Frog, Switch & Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d 742, 748 (3d Cir. 1999) ("[W]hile some causes of action for unfair competition, theft of trade secrets, or misappropriation may be covered by the standard policy, many are not."). Thus, this Court cannot rely solely on the general verdict to determine whether the jury found unfair competition based on a disparagement injury, and must look to the evidence considered by the jury in reaching its verdict. USX Corp. v. Adriatic Ins. Co., 99 F. Supp. 2d 593, 612 (W.D. Pa. 2000) ("Where the underlying action has been resolved by a jury, the insurer's duty to indemnify is determined by the material facts established at trial." (citing Enron Oil Trading & Transp. Co. v. Underwriters of Lloyd's of London, 47 F. Supp. 2d 1152, 1161 (D. Mont. 1996)).

Maglio has failed to meet its initial burden to show that the Maglio brand claim falls within the policies' grant of coverage. The trial record shows that Leonetti's only theory of the Maglio brand claim presented at trial argued that Maglio knowingly misrepresented the quality, appearance, and contents of its own products. Maglio has not pointed to any evidence in the underlying trial record that shows that Maglio disparaged Leonetti's or its products in its sale of Maglio brand stromboli; rather, it merely misrepresented its own product. See Frog, Switch &

Mfg. Co., Inc. v. Travelers Ins. Co., 193 F.3d at 748 (finding no coverage where no allegations that insured disparaged another's products).[11]

Moreover, even if the policies cover the Maglio brand claim as an advertising injury, the Knowledge of Falsity exclusion – present in both policies – defeats coverage. The policies exclude coverage for claims "[a]rising out of oral or written publication of materials, if done by or at the direction of the insured with knowledge of its falsity." Charter Oak Policy at 2.a (Coverage B); American Guarantee Policy at IV.C.5(b).

The trial record makes clear that Maglio's broker and sales manager, Richard Taubman, knew that the Maglio brand boxes did not accurately represent the product contained within them and that Maglio misled the public by using those boxes. See ECF 40 (Pl.'s Mot. for Summ. J.) at 25. Maglio's attempt to distance itself from the testimony of Mr. Taubman by suggesting that Mr. Taubman did not act on behalf of Maglio fails to raise a material factual dispute, because Maglio points to no facts in the trial record in support of its position. See ECF 41-1 (Br. in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Mot. for Summ. J.) at 31. Andrew Maglio, the president of Maglio, testified at trial that Mr. Taubman acted as Maglio's sales manager – meaning that he was in charge of sales, ordering product for stromboli, and ordering boxes for products – and that Mr. Taubman had authority to act and did act on behalf of Maglio. ECF 45 (Reply Br. of Def. American Guarantee in Supp. of Cross Mot. for Summ. J.) at 7.

This Court thus grants summary judgment to Charter Oak and American Guarantee on the Maglio brand claim, finding that the record of the underlying litigation does not allow a

---

[11] Because this Court finds that the Maglio brand claim is not covered by the Charter Oak policy, it also finds that the claim does not fall within the scope of American Guarantee's Coverage A, or excess, insurance, which only provides excess coverage where the underlying policy provides coverage.

conclusion that the Maglio brand claim does necessarily fall within the policies' scopes of coverage and that, in any case, the express exclusions bar the claim.[12]

### 2. The Forte Brand Claim

As with the Maglio brand claim, the Court must determine whether the Forte brand claim is an injury arising from Maglio's disparagement of Leonetti's or it products. The jury in the Forte brand trial also returned a general verdict against Maglio for unfair competition. The trial record demonstrates that counsel for Leonetti's offered several theories of liability. To be sure, one of these – that Maglio made inaccurate and reckless statements to customers regarding Leonetti's ownership of the Forte brand – sounds in disparagement. See ECF 41-1 (Br. in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Mot. for Summ. J.) at 34. However, other theories, such as the use of deceptive samples, do not. See ECF 40 (Pl.'s Mot. for Summ. J.), Ex. K at 42:16-43:16. Maglio cannot demonstrate the extent to which the jury awarded damages based on Leonetti's disparagement theory as opposed to any other theory. Absent such showing, Maglio will not be able to meet its burden at trial to show that the claim falls within the scope of coverage. See State Farm Fire & Cas. Co. v. Estate of Mehlman, 589 F.3d 105, 111 (3d Cir. 2009) (determining coverage based on allegations in the complaint and holding that insured bears the initial burden to make a prima facie case that claim falls within coverage); see also USX Corp. v. Adriatic Ins. Co., 99 F. Supp. 2d at 612.

Nor can Maglio demonstrate that the American Guarantee policy provides coverage for the Forte brand claim. First, the American Guarantee policy's excess coverage does not cover claims that the underlying insurance does not cover. American Guarantee Policy at I.C (noting that "if underlying insurance does not apply to damages, for reasons other than exhaustion of

---

[12] The parties' briefs addressed the issue of whether the policies cover the jury's punitive damages award. The Court declines to reach that question since it finds that the claim is not covered by the policies.

applicable limits of insurance payment of claims, then Coverage A does not apply to such damages"). Nor does the umbrella insurance coverage of the American Guarantee policy provide coverage, since Charter Oak tendered its policy limit in full satisfaction of the Forte brand claim. Id. at I.D ("Coverage B will not apply to any loss, claim or suit for which insurance is afforded under underlying insurance or would have been afforded except for the exhaustion of the limits of insurance of underlying insurance.")

Because Maglio cannot meet its burden at trial of showing that the damages against it were based on a covered claim, this Court grants Charter Oak's and American Guarantee's summary judgment motions with respect to the Forte brand claim.

### A. Maglio's Equitable Arguments

Maglio offers several equitable arguments suggesting that, even if the Court finds that the claims against Maglio are not covered by the policies, it should nevertheless bar Charter Oak and American Guarantee from contesting coverage.

A very recent Pennsylvania appellate decision discusses in great detail Pennsylvania law on insurance policy construction, including many issues in this case. Babcock & Wilcox Co. v. Am. Nuclear Insurers and Mutual Atomic Energy Liab. Underwriters (Babcock), 2013 PA Super 174, __ A.3d __, 2013 WL 3456969 (July 10, 2013). Babcock involved insurance coverage disputes regarding claims arising out of injuries sustained by alleged radioactive emissions from two nuclear fuel processing facilities. Id. at *1. The court considered the issue of whether an insured must honor a consent to settlement clause in an insurance contract when the insurer tenders a defense subject to a reservation of rights. Id. at *7. The court first confirmed certain "bedrock principles" of Pennsylvania law, including that "Pennsylvania counterbalances the insurer's broad obligation to defend even claims as to which coverage may not apply by providing the insurer the option of defending subject to a reservation of its right later or

21

simultaneously to contest coverage." Id. at *8. The court then held that when an insurer avails

itself of the insurer's obligation to defend, "the insured remains bound to the corollary

requirement that the insurer have sole authority to control the defense." Id. at *16.

The court noted that its discussion was "not to say that, when an insured accepts the

insurer's defense, the insurer's conduct of the litigation is subject to no further scrutiny," since

the insurer remains under the obligation to act in good faith by representing the insured's interest

and settling the case where appropriate. Id. at *16. However, the court made clear that, if the

insured has decided to accept the defense, that its "sole protection against any injuries arising

from the insurer's conduct of the defense" is a claim for bad faith. Id. at *17.

For the reasons set forth below, and in light of Babcock, this Court finds Maglio's

arguments unavailing.

### 1. Waiver

Under Pennsylvania law, neither waiver nor estoppel can create an insurance contract

where none existed. Pizzini v. Am. Int'l Specialty Lines Ins. Co., 107 F. App'x 266, 268 (3d Cir.

2004) (citing Wasilko v. Home Mut. Cas. Co., 232 A.2d 60, 63 (1967)). Waiver of a contractual

right must be proven by clear and convincing evidence showing that the insurance company

voluntarily and intentionally relinquished a known right with full knowledge of all the facts. See

W. World Ins. Co. v. Delta Prop. Mgmt. Inc., 10CV0279, 2010 WL 4923483 (W.D. Pa. Nov. 29,

2010). Moreover, as noted above, Pennsylvania law has long recognized that if an insurer

defends an insured subject to a "reservation of rights" letter, then the insurance company does

not lose the right to later contest its duty to indemnify. Babcock, 2013 WL 3456969 at *8; see

also, Essex Ins. Co. v. RMJC, Inc., 306 Fed. App'x 749, 755 (3d Cir. 2009); New Century

Mortg. Corp. v. Great Northern Ins. Co., Civ. A. No. 07-640, 2009 WL 34444759, *7 (D. Del.

Oct. 26, 2009).

Maglio has not met its burden.  Maglio offers no law or facts to support a finding of waiver due to Charter Oak's alleged failure to seek a timely intervention or to timely file a declaratory action.  Charter Oak had no obligation to intervene or to file a declaratory action when the underlying litigation unfolded.  Nor do the parties dispute that Charter Oak sent Maglio numerous letters explicitly reserving its rights to contest coverage, and there is no evidence showing that Charter Oak ever relinquished or waived those rights.  See supra footnote 9 (discussing letters from Charter Oak to Maglio and observing Charter Oak's clear and consistent reservation of its rights).

Maglio also contends that Charter Oak waived its coverage defenses by paying the policy limit into an equitable interpleader action, which was ultimately paid to Leonetti's.  According to Maglio, Charter Oak's payment of the $1 million policy limit did not go toward the Forte brand claim alone, since that claim amounted to only $660,000.  Maglio contends that Charter Oak's payment in excess of the Forte brand claim constitutes an acknowledgement of liability for both the Forte brand and Maglio brand claims.

Courts have recognized that the tender of funds for settlement purposes does not waive a right to contest coverage where an insurer reserves its rights to do so.  See, e.g., Great Am. Ins. Co. v. Raque, 448 F. Supp. 1355, 1358 (E.D. Pa. 1978) aff'd, 591 F.2d 1335 (3d Cir. 1979) (deciding coverage questions where insurer tendered check for settlement of claims but reserved its rights to later seek indemnification); Shellhamer v. Grey, 519 A.2d 462, 468 (Pa. Super. Ct. 1986) ("[T]he payment of the limits of the defendant's insurance policy into court would not appear to be prejudicial to the rights of either party."); see also 14 Couch on Ins. § 203:35 ("An insurer is estopped from contesting this issue of coverage where the insurer promises the insured that it will pay the settlement.").  Charter Oak made clear that its purpose in initiating the

equitable interpleader action was to stop the accrual of post-judgment interest and facilitate the settlement of Leonetti's claims. ECF 6 (Am. Compl.), Ex. 24 (Compl. for Equitable Interpleader) ¶ 18. The insurer did not indicate in any way that it decided to reverse its previous and clear reservation of its rights to contest coverage. Thus, the payment of the policy limit via the equitable interpleader action cannot be deemed an intentional waiver of Charter Oak's defenses to coverage.

### B. Estoppel

Under Pennsylvania law, "the burden rests on the party asserting estoppel to establish the defense by clear, precise and unequivocal evidence." Chrysler Credit Corp. v. First Nat'l Bank & Trust Co., 746 F.2d 200, 206 (3d Cir. 1984) (citing Blofsen v. Cutaiar, 333 A.2d 841 (Pa. 1975)); Clunie-Haskins v. State Farm Fire & Cas. Co., 855 F. Supp. 2d 380, 390 (E.D. Pa. 2012). "A party seeking to establish an estoppel must show 'an inducement by the party sought to be estopped ... to the party who asserts the estoppel ... to believe certain facts to exist—and the party asserting the estoppel acts in reliance on that belief.'" Merchants Mut. Ins. Co. v. Artis, 907 F.Supp. 886, 891 (E.D. Pa. 1995) (quoting Sabino v. Junio, 272 A.2d 508, 510 (Pa. 1971)).

Maglio contends that this Court should estop Charter Oak from asserting its coverage defenses in light of its allegedly unreasonable refusal to settle Leonetti's claims within the policy limits and its failure to provide independent counsel to Maglio when a conflict of interest existed between Maglio and Charter Oak.

Maglio's arguments are not supported by Pennsylvania law. As Babcock makes clear, "[w]here the insurer assumes the duty to defend, the insurer can simultaneously challenge whether the claim is covered under the insurance policy, even if the underlying claim settles." Babcock, 2013 WL 3456969, at *8 (quoting Step Plan Servs., Inc. v. Koresko, 12 A.3d 401, 419 (Pa. Super. Ct. 2010)). If the insured accepts the insurer's defense, subject to a reservation of

24

rights, "the insurer retains full control of the litigation." Id. at 17.  Moreover, "an insurer

defending subject to a reservation of rights retains the ability to choose its own counsel"

notwithstanding the presence of a potential conflict of interest. Id. at *9 (citing Fed. Ins. Co. v.

X-Rite, Inc., 748 F. Supp. 1223, 1226 (D. Mich. 1990)).  Thus, under Pennsylvania law, "a

liability insurer will not be estopped to set up the defense that the insured's loss was not covered

by the insurance policy, notwithstanding the insurer's participation in the defense of an action

against the insured, if the insurer gives timely notice to the insured that it has not waived the

benefit of its defense under the policy." Id. (quoting Brugnoli v. United Nat'l Ins. Co., 426 A.2d

164, 167 (Pa. Super. Ct. 1981)).

　　　　As set forth, supra, Charter Oak retained full control of the litigation when Maglio

accepted its defense.  Its decisions – with respect to settlement of the claim or choice of counsel

– do not affect its clear and unambiguous reservation of rights.  Having received proper notice of

that reservation of rights, Maglio could not have justifiably relied on Charter Oak's refusal to

settle within policy limits or failure to appoint independent counsel as evidence of its

abandonment of its defenses.

　　　　This Court finds no support in the trial record for Maglio's contentions that Charter Oak

should be barred from presenting its defense.  However, the Court's finding does not leave

Maglio without recourse.  Maglio's protection for its contention that Charter Oak failed to

appropriately settle the case within the policy limits or failed to appoint independent counsel – its

sole protection – lies in its claim of bad faith.[13] See id. at * 17.

---

[13] Maglio asserts counterclaims against Charter Oak based on Charter Oak's alleged bad faith in refusing to settle
the underlying litigation within the policy limits and failing to appoint independent counsel to defend Maglio.  The
summary judgment motions presently before this Court do not address Maglio's counterclaims, pursuant to the
parties' agreement to proceed with coverage issues first. See ECF 28 (Jan. 23, 2013 Order).  The Court therefore
makes no finding with respect to Maglio's counterclaims at this time.

## VI.    Conclusion

For the foregoing reasons, this Court grants Charter Oak's and American Guarantee's Motions for Summary Judgment of non-coverage of the claims and will enter a declaratory judgment that Charter Oak and American Guarantee have no obligation to cover the claims against Maglio.  An appropriate order follows.

**APPENDIX A**

| Date | Event |
|------|-------|
| 2000-2007 | Maglio and Leonetti's, a food manufacturer, entered into an Oral Private Label Agreement that lasted for a number of years and was terminated in 2007 by Anthony Maglio, the president of Maglio. Once the agreement had been discontinued, Maglio began using a different private label producer, American Kitchen Delights, Inc. to manufacture its frozen stromboli. |
| Oct. 10, 2005 | As payment for money owed by Conti-Forte, Leonetti's took exclusive rights to the Forte brand. Dkt. No. 41, Resp. to Mot. for Summ. J. Ex. 1 (Complaint, agreement attached to Complaint as Ex. A). |
| Feb. 1, 2009 | The coverage period began, to extend through Feb. 1, 2010. The Web Xtend Endorsement alters the policy's terms. Dkt. No. 40, Mot. for Summ. J. Ex. L; *see also* Mot. for Summ. J. at ¶¶ 37-42; Dkt. No. 41, Resp. to Mot. for Summ. J. ¶¶ 37-42. |
| Mar. 8, 2010 | Leonetti's sued Maglio under theories of (1) tortious interference, (2) unjust enrichment, (3) breach of contract, (4) trade libel, and (5) equitable relief with respect to its sale of frozen stromboli. Dkt. No. 41, Resp. to Mot. for Summ. J. Ex. 1 (Complaint). |
| Feb. 4, 2010 | Maglio tendered the Underlying Action to Charter Oak and Charter Oak provided Maglio with a defense, subject to a reservation of its rights. Dkt. No. 6 (Amended Complaint) ¶ 27 [hereinafter Am. Compl.]. |
| May 4, 2010 | Charter Oak issued a reservation of rights letter to Maglio, in which it agreed to represent Maglio but also reserved its rights under the Charter Oak policy and under the law. Dkt. No. 41, Resp. to Mot. for Summ. J. Ex. 4 (May 4, 2010 letter); see also Am. Compl. ¶ 28. The letter stated: "The allegations in Count IV of the complaint allege damages for Trade Libel which Maglio Brothers could be legally obligated to pay because of a "personal injury" caused by an offense arising out of your business. For this reason, Travelers agrees to defend and indemnify Maglio Brothers in this matter up to the primary policy's limit of $1,000,000 for Personal, Advertising and Web Site Injury Limit, subject to this reservation of rights. None of the other claims asserted in Counts One [Tortious Interference], Two [Unjust Enrichment], Three [Breach of K], and Five [Equitable Relief] qualify for coverage . . . ." |
| Oct. 6, 2010 | Leonetti's amended its Complaint. In addition to the impermissible selling of the Forte brand, Leonetti's now alleged that Maglio continued to sell its own brand (the Maglio brand) after the termination of the private label agreement, but used the same packaging information from Leonetti's Forte brand products. The Amended Complaint requested relief under theories of common law unfair competition and negligent misrepresentation in addition to the causes of actions included in the original complaint. Dkt. No. 41, Ex. 5 (Leonetti's Amended Complaint). |
| | The court dismissed Leonetti's claims for negligent misrepresentation, unjust enrichment, and equitable relief as to the Maglio brand claim. The Maglio |

| | and Forte brand claims for unfair competition, trade libel, and tortious interference with a contract proceeded to trial against Maglio. Am. Compl. ¶ 3. |
|---|---|
| Sept. 27, 2010 | Leonetti's, via its counsel at White & William, sent a letter to Edward Kelbon, counsel for Maglio, responding to Maglio's request for settlement of claims involving the Forte brand and setting forth a demand of $1.25 million. Dkt. No. 53, Ex. 51 (Sept. 27, 2010 letter). |
| Oct. 7, 2010 | Mr. Kelbon, on behalf of Maglio, emailed with Sara Katz at American Guarantee to provide her with a case analysis and to send updated pleadings. Mr. Kelbon also attached a demand letter received from Leontti's. Dkt. No. 53, Ex. 52 (Oct. 7, 2010 email thread). Ms. Katz also sent a letter to Maglio, among others, acknowledging receipt of Maglio's claim. Id., Ex. 54. |
| June 22, 2011 | Charter Oak sent an updated reservation of rights letter to Maglio that addressed the Amended Complaint. In that letter, Charter Oak "reassert[ed] and remind[ed] Maglio that the allegations in the amended complaint that allege damages for Trade Libel which Maglio could be legally obligated to pay are covered under the policy … . However, none of the other claims asserted in the amended complaint qualify for coverage under the policy." Dkt. No. 41, Resp. to Mot. for Summ. J. Ex. 6 (June 22, 2011 letter); see also Am. Compl. ¶ 29. |
| July 2011 | Leonetti's counsel, David Haase of White & William, and Maglio's counsel, Richard Darnell met to discuss possible settlement. Dkt. No. 10 (Maglio's Answer to Am. Compl.) ¶ 5 [hereinafter Ans.]. |
| July 11, 2011 | Charter Oak filed a Petition for Limited Intervention to submit special verdict forms to the jury. Am. Compl. ¶ 30 & Ex. 6 (Petition), Exs. 7-8 (July 21, 2011 proposed instructions). |
| Aug. 4, 2011 | The court then denied Charter Oak's Petition. Am. Compl. Ex. 9 (Order). |
| Sept. 19, 2011 | Charter Oak then submitted a motion for reconsideration, which was denied. Am. Compl. ¶ 33 & Ex. 10 (Transcript of Motion for Reconsideration hearing). |
| Sept. 29, 2011 | Charter Oak requested that counsel for Maglio submit its special interrogatories. Am. Compl. ¶ 33 & Ex. 11 (Sept. 29, 2011 letter from Charter Oak to Maglio). The court permitted Maglio to submit Charter Oak's proposed special verdict forms but declined to do so. |
| Oct. 2011 | After nine days of trial, the jury advised the trial court that it could not reach a decision concerning the Forte brand claim. The court declared a mistrial as to the Forte brand claim, but allowed the Maglio brand claim to proceed to verdict on a single count of unfair competition. Am. Compl. ¶ 34; Ans. ¶ 34. |
| Oct. 3, 2011 | The court entered a general verdict against Maglio on the Maglio brand claim for a total of $2,555,000 ($2,000,000 for compensatory damages and $555,000 for punitive damages). The verdict did not state the basis of the award of either compensatory or punitive damages. Am. Compl. ¶ 39 & Ex. 15 (verdict sheet). |
| Oct. 12, 2011 | Maglio filed a post-trial motion on the Maglio brand claim. Am. Compl. ¶ 49. |
| Oct. 24, 2011 | Maglio sent a letter to Charter Oak questioning its position on coverage. Am. |

|  | Compl. 41 & Ex. 16 (Oct. 24, 2011 letter).  Charter Oak responded on Oct. 31, 2011.  Am. Compl. ¶ 42 & Ex. 17 (Oct. 31, 2011 letter). |
|---|---|
| Nov. 29, 2011 | Lonetti's sent a letter to Judge Bernstein stating that it would have globally settled all claims against Maglio for less than $1 million policy limits if a good faith offer has been made before trial.  Ans. ¶ 7. |
| Dec. 2, 2011 | American Guarantee issued a denial letter, which noted that, "[a]fter a careful review of this claim, including suit papers, defense counsel reports, coverage positions and policies, we have determined that American Guarantee has no duty at this time to provide a defense or immunity to Maglio Brothers for this subject matter. … Because the verdict is based on a claim for unfair competition, which has been disclaimed under Travelers' Coverage A, American Guarantee's Coverage A is not applicable.  With regard to Coverage B, unfair competition is not a covered loss." Dkt. No. 21, Am. Countercl. Ex. 5 (Dec. 2, 2011 letter). |
| Dec. 7, 2011 | Leonetti's and Maglio retried the Forte brand claim, on a single count of unfair competition.  Am. Compl. Ex. 20 (verdict sheet). |
| Dec. 16, 2011 | During the Forte brand trial, Maglio requested that Charter Oak make its $1 million policy limit available towards a settlement of the claims.  Am. Compl. ¶ 44 & Ex. 18 (demand letter). |
| Dec. 22, 2011 | Charter Oak made available its $1 million policy limit to Maglio, authorizing it to use the money to attempt to settle on Dec. 22.  Maglio was unsuccessful in these efforts at that time. Am. Compl. ¶ 45 & Ex. 19 (Dec. 22, 2011 letter from Charter Oak to Maglio). |
| Dec. 22, 2011 | The jury returned a general verdict against Maglio in the Forte brand claim trial and awarded Leonetti's $660,000 in compensatory damages.  Am. Compl. ¶ 45 & Ex. 20 (verdict sheet). |
| Jan. 3, 2012 | Maglio filed a post-trial motion on the Forte brand claim.  Am. Compl. ¶ 50. |
| Jan. 4, 2012 | Susan Hogan (Charter Oak's counsel) sent a letter to Joseph Turchi (personal counsel for Maglio) reminding Maglio that Charter Oak had tendered $1M and reiterating Charter Oak's willingness to offer those funds for settlement of claims.  Am. Compl. ¶ 46 & Ex. 21 (Jan. 4, 2011 letter). |
| Jan. 26, 2012 | Charter Oak filed a complaint in Charter Oak Fire Ins. Co. v. Leonetti's Frozen Foods, Inc., et al., Phila. Co. Ct. of Common Pleas, January Term 2012, No. 3429 (the "Equitable Interpleader Action").  Am. Compl. Ex. 24 (Complaint for Equitable Interpleader).  Charter Oak offered to deposit its $1 million policy limit plus post-judgment interest accrued as of the date of its deposit of those funds with the court. |
| Feb. 3, 2012 | American Guarantee issued another denial letter reiterating the position taken on Dec. 2, 2011 and stating that American Guarantee would not contribute towards a settlement of the claims.  Dkt. No. 21, Am. Countercl. Ex. 6 (Feb. 3, 2012 letter). |
| Feb. 7, 2012 | Charter Oak filed a motion to deposit its policy limit, plus post-judgment interest accrued through the date of the filing of its Complaint, with the court in the Equitable Interpleader Action.  Am. Compl. ¶ 48 & Ex. 25 (motion). |
| Feb. 29, 2012 | Stewart Greenleaf (local counsel for Charter Oak) emailed Ronald Daugherty (personal counsel for Maglio) reiterating that Charter Oak would pay "the |

| | cost of an appeal bond, but only in the amount of the policy limits plus interest" in response to a question from Mr. Daugherty.  Am. Compl. ¶ 46 & Ex. 22 (Feb. 29, 2012 email). |
|---|---|
| March 5, 2012 | The court granted Charter Oak's Feb. 7 motion in the Equitable Interpleader Action and Charter Oak then deposited the funds into an interest-bearing account.  Am. Compl. ¶ 48 & Ex. 26 (Order granting motion). |
| March 15, 2012 | The trial court denied Charter Oak's post-trial motion on the Maglio brand claim.  Am. Compl. ¶ 49. |
| Apr. 24, 2012 | Ms. Hogan sent a letter to Mr. Turchi following up on Apr. 18, 2012 meeting.  Am. Compl. ¶ 46.  The letter notes that "[d]espite [Charter Oak's] request that [Maglio] do so, [Maglio] refused to provide us with the factual or legal basis for your assertion that Travelers and Zurich must fund any settlement reached on behalf of Maglio."  Am. Compl. Ex. 23 (Apr. 24, 2012 letter).  The letter reiterated Charter Oak's assertion that the Maglio brand verdict was not covered by policy and that Charter Oak would only contribute up to the policy limit plus interest. |
| May 1, 2012 | American Guarantee issued a denial letter, summarizing the status of the underlying action (including an overview of the evidence presented at the Maglio brand trial), and setting forth 3 coverage defenses (false advertising, noncomformity exclusions, and false publication exclusions). Dkt. No. 21, Am. Countercl. Ex. 7 (May 1, 2012 letter). |
| May 2, 2012 | Ms. Hogan emailed Mr. Turchi advising Maglio that "there may be consequences under the Travelers policy that Maglio and/or Leonetti's should consider."  Am. Compl. ¶ 52 & Ex. 28 (May 2, 2012 email). |
| May 4, 2012 | The trial court denied Charter Oak's post-trial motion on the Forte brand claim denied.[14]  Am. Compl. ¶ 50. |
| May 8, 2012 | Maglio and Leonetti's entered a settlement agreement for $4.5 million.  Charter Oak did not participate and was not involved in negotiation of the deal.  Am. Compl. Ex. 27 (Settlement Agreement); Ans. Ex. 4 (same).  After execution, Maglio sent Charter Oak a copy of the Agreement.  Am. Compl. ¶ 53 & Ex. 30 (May 8, 2012 email from Justin Proper, counsel for Leonetti's, to Ms. Hogan). |
| May 9, 2012 | Maglio filed a Motion for Release of Funds Deposited by Charter Oak in the Equitable Interpleader Action and Leonetti's filed a Notice of Non-Opposition to Maglio's motion.  Am. Compl. ¶ 57 & Exs. 35-36 (Maglio's and Leonetti's motions, respectively). |
| May 10, 2012 | Maglio filed Motion to Approve the Entry of a Consent Judgment and Leonetti's filed a Notice of Non-Opposition to Maglio's motion.  Am. Compl. ¶ 54 & Exs. 31-32 (Maglio's and Leonetti's motions, respectively). |
| May 18, 2012 | Charter Oak filed an Emergency Petition to Intervene in the Underlying Action to request that the court grant it leave to file an opposition to Maglio's Motion to Approve the Entry of a Consent Judgment.  Am. Compl. ¶ 55 & Ex. 33 (Emergency Petition). |
| May 29, 2012 | Charter Oak then filed an Opposition to Motion to Release Funds in the |

---

[14] That court originally denied this motion on March 15, 2012, but vacated that order 4 days later.

| | Equitable Interpleader Action.  Am. Compl. ¶ 58 (Opposition). |
|---|---|
| June 14, 2012 | The court granted Charter Oak's Emergency Petition and scheduled a hearing for July 24, 2012. |
| June 28, 2012 | Charter Oak filed a Praecipe to Withdraw Opposition.  Am. Compl. ¶ 58 & Ex. 36 (Praecipe). |
| July 9, 2013 | The court then entered an Order directing Charter Oak to distribute the full amount of the deposit to Leonetti's.  Dkt. No. 40 ¶ 36. |
| July 12, 2012 | Charter Oak filed a Complaint against Maglio, initiating the present action |
| July 16, 2012 | The court released the funds at issue in Equitable Interpleader Action to Leonetti's.  Ans. ¶ 58. |
| July 24, 2012 | Court denied Maglio's Motion to Approve the Entry of a Consent Judgment.  Am. Compl. ¶ 56 & Ex. 34. |

O:\Caitlin\Civil\12-3967 (Charter Oak)\2013.10.22 MoL on MSJ.docx