**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| Charter Oak Insurance Co., | : | CIVIL CASE |
| Plaintiff, | : | |
| v. | : | |
| | : | |
| Maglio Fresh Food d/b/a Maglio's | : | |
| Sausage Co., et al., | : | |
| Defendants. | : | NO. 12-3967 |

<u>**MEMORANDUM RE SUMMARY JUDGMENT MOTIONS**</u>

Baylson, J.                                                                          July 14, 2014

### I.   Introduction

This action involves counterclaims by an insured, Maglio Fresh Food ("Maglio") for bad

faith based on the conduct of two insurers, Charter Oak Insurance Company ("Charter Oak"), the

issuer of primary coverage, and American Guarantee and Liability Insurance Company

("American Guarantee"), the issuer of an excess and umbrella policy.

As noted in this Court's Scheduling Order, dated January 23, 2013, the parties agreed that

the Court should decide the coverage issues first, before addressing the counterclaims for bad

faith.  The parties therefore submitted cross-motions for summary judgment on the issue of

coverage last summer.

On October 24, 2013, this Court decided those motions, finding that neither policy

provided coverage for the Maglio brand claim and that Maglio could not meet its burden to show

that the damages awarded for the Forte brand claim were based on a covered claim.[1]  <u>Charter</u>

<u>Oak Ins. Co. v. Maglio Fresh Food</u>, 979 F. Supp. 2d 581, 584 (E.D. Pa. 2013) [hereinafter

October 24 Order and Memorandum].

---

[1] A detailed summary of the procedural history of this lawsuit can be found in this Court's
October 24, 2013 Memorandum and Order.  ECF 58-59.  Because that Memorandum defines the
terms "Maglio brand claim" and "Forte brand claim," this Order will assume familiarity with
them.  <u>Id.</u>

Maglio then amended its counterclaims for bad faith against each insurer.  Maglio alleges that Charter Oak violated its duty to act in bad faith in the following ways:  (1) by failing to acknowledge a conflict of interest between Charter Oak and Maglio, advise Maglio of its right to independent counsel as a result of that alleged conflict, and provide independent counsel; (2) by failing to intervene in the underlying litigation in a timely manner in order to submit jury interrogatories as means of clarifying whether the jury found against Maglio based on a theory of liability that the insurance policies would cover (i.e., trade libel) or on an uncovered theory; and (3) by failing to consider settlement offers and attempt to settle the underlying lawsuit in good faith.  Maglio alleges that American Guarantee acted in bad faith by (1) failing to conduct a reasonable investigation before disclaiming coverage for Maglio's claims, and (2) failing to provide a defense to Maglio and refusal to post an appeal bond upon the exhaustion of Charter Oak's policy limits.

Both insurers moved for summary judgment on these claims.  ECF 130 (Mot. for Summ. J. filed by Charter Oak on June 2, 2014); ECF 129 (Mot. for Summ. J. filed by American Guarantee on June 2, 2014).  Maglio also moved for summary judgment.  ECF 131 (Mot. for Summ. J. as to claims against Charter Oak, filed by Maglio on June 2, 2014); ECF 133 (Mot. for Summ. J. as to claims against American Guarantee, filed by Maglio on June 3, 2014).  The Court held oral argument on these motions on June 26, 2014.  ECF 150.

This Memorandum will address two contested legal issues and then address the disputed factual issues.  Because certain disputed facts are material to the disposition of this action, the Court will deny the Motions for Summary Judgment.

## II.    Legal Issues

Before reaching the disputed facts, the Court will confront two legal arguments of

Charter Oak regarding the scope of this Court's October 24, 2013 Memorandum and Order (ECF

58-59).

Charter Oak maintains that this Court's Order, in which the Court found that the insurers

did not have a duty to indemnify, bars Maglio from proceeding on its bad faith claims.  In doing

so, Charter Oak misstates the law.  Pennsylvania courts are clear:  "An insurer's duty to defend is

broader than its duty to indemnify."  Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d

526, 540 (Pa. 2010).  The duty to defend "is a distinct obligation, separate and apart from the

insurer's duty to provide coverage."  Id. at 541.  Where there are multiple causes of action in the

underlying litigation and one potentially constitutes a claim within the scope of the policy's

coverage, the insurer has a duty to defend the insured until it can confine the claim to a recovery

excluded from the policy.  See Penn-Am. Ins. Co. v. Peccadillos, Inc., 27 A.3d 259, 264-65 (Pa.

Super. Ct. 2011).

Moreover, Charter Oak is correct that Pennsylvania courts allow an insurer to provide

and control a defense of the insured subject to a reservation of rights, and doing so does not

inherently constitute bad faith.  However, that recognition – that an insurer can defend its

insured, subject to a reservation of rights, without acting in bad faith – does not support Charter

Oak's contention that an insurer never acts in bad faith under those circumstances.  As the

Superior Court of Pennsylvania recently observed, "[t]his is not to say that, when an insured

accepts the insurer's defense, the insurer's conduct of the litigation is subject to no further

scrutiny."  Babcock & Wilcox Co. v. Am. Nuclear Insurers, 76 A.3d 1, 16 (Pa. Super. Ct. 2013)

appeal granted on other grounds, 84 A.3d 699 (Pa. 2014).  Rather, the insurer "remains bound by

its fiduciary obligation to represent the insured's interests, and to settle the case when appropriate, in keeping with its obligation of good faith." Id.

Charter Oak also seems to contend that this Court's Memorandum and Order on indemnification also resolved certain factual issues related to bad faith. For example, Charter Oak suggests that this Court's observation that Charter Oak did not have a duty to intervene in the underlying litigation also resolves the question of whether Charter Oak's failure to do so in a timely fashion constitutes bad faith, when doing so may have been advantageous to Maglio. At the time, Maglio faced potential liability based on certain claims, some of which were not covered by the policy and some of which may have been. Although this Court later determined that Charter Oak did not have to indemnify Maglio, such a determination was by no means certain at the time Charter Oak made a number of decisions relevant to Maglio's current bad faith claims. Note that this clarification does not necessarily lead to a finding of bad faith; rather, the point is simply to clarify the inquiry: In order to determine whether Charter Oak acted in bad faith, the factfinder must evaluate Charter Oak's conduct vis-a-vis the factual landscape that existed at the time of the conduct in question, not based on this Court's later determinations. Cf. La Rocca v. State Farm Mut. Auto. Ins. Co., 329 F. Supp. 163, 169 (W.D. Pa. 1971) ("The event constituting breach of the fiduciary duty to handle settlement negotiations in good faith is the refusal to accept a settlement offer which would be reasonably advantageous to the insured in light of all circumstances known at the time." (emphasis added)).

Having established the limits of this Court's October 24 Memorandum and Order, I now turn to the disputed factual issues preventing the grant of the pending motions for summary judgment.

### III.    Factual Issues

Certain factual disputes as to the conduct of both Charter Oak and American Guarantee prevent this Court from granting the motions for summary judgment.

### A.  Charter Oak

There are several factual disputes regarding Maglio's claims of bad faith against Charter Oak, which prevent the Court from granting either party's motion for summary judgment as to the claims against Charter Oak.

### 1.  The Intervention/Jury Interrogatory Issue

Specifically, as discussed at the oral argument on summary judgment motions, this issue concerns whether Charter Oak adequately protected Maglio's interests in securing a separate jury answer to a jury interrogatory concerning the "trade libel" claim that had been made.

Charter Oak acknowledged in its updated reservation of rights letter to Maglio dated June 22, 2011, that a verdict against Maglio for trade libel would potentially be covered under the Charter Oak policy, although Charter Oak continued to dispute the coverage for any other claims.

To the extent that a trial involved potentially covered theories of liability, Maglio had an interest, and indeed a right, to have Charter Oak take appropriate steps so that the jury could be instructed on, and if the evidence warranted under the law, return a verdict of liability on the trade libel claim.  The record shows that the first trial concerned both the Forte brand claim and the Maglio brand claim until the end,[2] and that the Forte brand trial also included some potentially covered theories of liability as well as other theories that the policies would not cover.

---

[2] At the June 26, 2014 oral argument, counsel for Charter Oak suggested that Leonetti's withdrew its trade libel claim during the trial, removing the trade libel claim from the suit. Careful review of the briefs submitted by Charter Oak and the accompanying exhibits, as well as the overall record, does not confirm that assertion.  Nevertheless, the record is clear that the

The best way to describe the events leading up to the verdict against Maglio on the Maglio brand claim on October 3, 2011 is by means of a chronology.  Although a limited chronology was attached to this Court's October 24, 2013 Memorandum, the discovery record has now allowed an expansion of this chronology, which is included at Appendix B.[3]

The facts included at Appendix B are generally undisputed because they are based on documentary evidence, the authenticity and admissibility of which is clear.  From this chronology, the Court draws a conclusion that Charter Oak acted appropriately in virtually all respects in discharging its obligations to its insured Maglio.  The only caveat is the fact that Judge Bernstein denied the Charter Oak petition for limited intervention filed on July 11, 2011 as untimely, which could imply that Charter Oak should have and could have taken such a step in an earlier proceeding.  However, notwithstanding this one potential defect in Charter Oak's discharge of its obligations as insurer, the record shows that Judge Bernstein nonetheless considered submitting special interrogatories to the jury, and gave Charter Oak's counsel an opportunity to present its suggested interrogatories to Maglio's counsel.  Indeed, at the Motion for Rehearing on the denial of the Petition to Intervene, Judge Bernstein directed Mr. Kelbon to consider any jury interrogatories that were suggested by Charter Oak and to submit them to the court if doing so did not conflict with his representation of Maglio.  A letter sent from Ms. Hogan of Kramon & Graham, Charter Oak's coverage counsel, to Maglio's counsel, attaching proposed interrogatories – which included a question as to trade libel – demonstrates that Charter Oak complied with Judge Bernstein's instruction.

---

Forte brand claim – the only claim involving a potentially covered theory of liability – resulted in a mistrial at the end of the first trial and was retried in December 2011.

[3] Appendix A identifies the key figures involved in the events in question.

From the above facts, the Court can only conclude that Charter Oak was acting in good faith in having retained special coverage counsel, in giving Mr. Kelbon full latitude in representing Maglio, and in advocating special interrogatories, which could have, if submitted to the jury, resulted in a verdict as to which there was coverage under the policy, albeit for the Forte brand claim.

The missing facts as to this aspect of the case relate to Mr. Kelbon's conduct and decision making. In retrospect and with the clarity of hindsight, it is hard to understand Mr. Kelbon's reason for not taking advantage of the Court's willingness to submit special interrogatories. It would seem that Maglio would have every interest, if the jury was inclined to find damages against Maglio, that the damages be based on a claim that the insurance policies would have covered. Granted Mr. Kelbon may have been walking a tight rope,[4] but his deposition failed to reveal any reasons for his decisions, and with due respect for counsel in this case, he was not cross-examined closely on this topic. Mr. Silverman asked Mr. Kelbon, "wouldn't it be true if Maglio had asked you, would I rather have a general verdict or a special verdict, you would tell them a general verdict?" ECF 139, Ex. 2 ("Kelbon Dep.") at 129:3-7. Mr. Kelbon responded: "No, I don't know what I would have told them under specific facts. I'd have to go back in that case at that specific point in time and look at everything and make a determination on what would work best for the client. I can't sit here today and say what would have been best and

---

[4] Maglio has brought a malpractice claim against Mr. Kelbon, which has been stayed pending this litigation. As a result of the malpractice claim, the Court understands that Maglio may have been unwilling to press Mr. Kelbon at his deposition in this case. By the same token, Mr. Kelbon, being a defendant in the malpractice suit, may have been hesitant to state his true reasons for his conduct and advice during the trial. Mr. Kelbon's testimony must be taken in this full context since the existence of the malpractice claim may be admissible to cross-examine Mr. Kelbon as it could call into question his motivation and credibility.

what would not have been best." Id. at 129:10-20.  Mr. Kelbon continued to testify that he could

not recall the specific circumstances surrounding the issue:

> Q.  And do you recall that Judge Bernstein, in his order, suggested
> that [Charter Oak] could give defense counsel, your firm, and you,
> sir, copy of their proposed interrogatories, and then you could
> decide whether or not you would submit them or not?
>
> A.  And I don't recall what the order said, you know, one way or
> the other.
>
> Q.  Do you recall being given by Mr. Greenleaf, or any other firm
> that represented [Charter Oak], special jury interrogatories with the
> request that these be submitted to the Court?
>
> A.  I don't have a recollection at this point in time to that.
>
> Q.  Okay.
>
> A.  I just don't remember, quite frankly.

Id. at 130:13-131:8.

This missing fact, i.e., why Mr. Kelbon took the positions that he did at the September 19

conference and the September 28-29 charge conference, is open only to speculation, unless and

until Mr. Kelbon testifies at trial.  The record also does not show whether any principal of

Maglio took a position as to the special interrogatories, or whether there were any

communications from Charter Oak that are not disclosed by the current record.

As the record stands, Charter Oak appears to have been acting in good faith.  Since

Charter Oak is the moving party on summary judgment, and has established facts showing its

good faith, then under Rule 56, Maglio bears the burden of coming forth with disputed facts

upon which a jury could find in Maglio's favor on this issue.  Arguably, Charter Oak could be

entitled to partial summary judgment as to this issue; however, since, as noted below, the

"settlement" issue must still go to trial, the Court believes that the better course of action is to

submit this aspect of Maglio's bad faith claim to a trial process as well.

At the beginning of trial, the Court will require Maglio to make an offer of proof as to any factual disputes on this issue not identified above, and to identify any evidence that Maglio will introduce to prove that Charter Oak acted in bad faith with regard to this issue.

### a.   Independent Counsel Issue

On a related point, and based on the above chronology and review of facts, the Court concludes that the factual record shows that Charter Oak appointed Edward Kelbon of Reger Rizzo & Darnall LLP in good faith.  All available evidence shows that Charter Oak retained its own coverage counsel (Susan Hogan of Kramon & Graham PA and Stewart Greenleaf of Elliot Greenleaf) to state its coverage position and retained Mr. Kelbon to represent and defend Maglio's interests.  Moreover, the record suggests that Charter Oak gave Mr. Klebon full independence to defend Maglio in accordance with Maglio's instructions.  This conclusion is particularly supported by Mr. Kelbon's decision not to submit jury interrogatories, even under pressure to do so from Charter Oak.

### 2.        Refusal to Settle Issue

The Court has developed a separate chronology for the events concerning the settlement issue, which is included at Appendix C.

Based on that chronology, there is no factual issue that, at least until the verdict of October 3, 2011, Charter Oak did not breach any duty to Maglio to make its $1 million policy limits available to settle the case.  The principal, and obvious, reason for this is the valuation provided by Mr. Kelbon, as Maglio's counsel, and also by an expert retained by Kelbon, consistently fell below the policy limit amount.  However, a factual issue arises as of the entry of the verdict on October 3, 2011 for over $2 million as to the Maglio brand claim only, leaving the Forte brand claim.  The question at that time is whether Charter Oak fully discharged its

fiduciary responsibilities to arrive at a settlement with Leonetti's.  The Court believes there are the following separate factual issues which require a trial:

a.  It appears from the chronology at Appendix B that Leonetti's made a demand to settle the Forte brand claim only, originally for $1.5 million, and then for $1 million, the exact amount of Charter Oak's policy limits.  Should Charter Oak have done so at that point in time, which was prior to the Forte brand verdict in the amount of $660,000?

b.  Second, also prior to the Forte brand verdict, Charter Oak insisted that it would only agree to a global settlement of all claims.  This insistence by Charter Oak should have seemed very attractive to Maglio, but apparently was rejected by Leonetti's.  The facts surrounding these discussions raise several potential issues, which must be addressed at trial.

c.  Third, the Leonetti's letter of November 29, 2011, indicating that it would have settled all of the claims for under $1 million, raises issues of fact as to why Leonetti's would send such a letter, after it had secured a verdict on the Maglio brand claim alone of over $2 million.

d.  Fourth, Mr. Turchi's letter of December 16, 2011 appears to be the first time that Maglio demanded the policy limits.  The timing of this request raises questions.

e.  Fifth, factual questions exist as to Charter Oak's motivations and reasons for its conduct in the period of time between the October 3 verdict on the Maglio brand claim, and the December 22 or December 23 (the record is not clear as to the date) verdict on the Forte brand claim, and whether Maglio was prejudiced by any act or omission by Charter Oak during this period of time.

10

       i.   Specifically, factual questions are present as to the timing of the December 22, 2011 letter, in which Charter Oak offered its full policy limit for Maglio to attempt to negotiate a global settlement, where the Forte brand verdict followed so soon thereafter.

    f.   It also appears from the record that there was a delay from the date when Charter Oak indicated it would put up its $1 million and the date it actually did so.  The reasons for this, and whether Maglio suffered any injury by any act or omission by Charter Oak during this period, might also be relevant.

**B.**    **American Guarantee**

The chronology at Appendix A also raises a narrow but nonetheless unresolved set of factual issues as to American Guarantee as follows.

       **1.**    **Prior to Forte Brand Verdict**

Once the Maglio brand claim had been evaluated by the jury at over $2 million, should American Guarantee have been on notice that Maglio's prior estimates of potential damages were unrealistic and that Leonetti's claims had much more jury appeal, whatever their legal strength?  Specifically, should American Guarantee have initiated a new review of the situation, or seek some independent counsel's advice, recognizing that there was an increase risk that its fiduciary obligations to Maglio may be "triggered?"  Should the ongoing litigation as to the Forte brand claim, including the trade libel claim as to which Charter Oak had admitted potential coverage, have required American Guarantee to step up because its excess insurance level may come into play in the retrial?  Generally, from the period of October 3, 2011 through the date of the Forte brand verdict of $660,000, did American Guarantee meet its potential defense obligations to Maglio?

### 2. After the Forte Brand Verdict – Bond for Appeal

Following the Forte brand verdict for $660,000 – an amount below the Charter Oak

policy limits – American Guarantee could arguably have continued its very limited involvement

on the assumption that the Charter Oak primary policy would cover that claim.  However, once

Charter Oak decided to tender its full policy limit to Maglio on December 22, 2011, American

Guarantee's obligations may have changed.

Maglio contends that, although Charter Oak continued to provide for Maglio's defense,

American Guarantee had a duty to provide Maglio with the remaining funds necessary to post a

bond to appeal the verdicts.  American Guarantee argues that its duty to defend and post a bond

is triggered only "when the applicable limit of the underlying insurance has been exhausted by

payment of claims for which coverage is afforded under this policy."  ECF 128, Ex. 2 (American

Guarantee policy).  American Guarantee submits that the date of "payment of claims" was not

until the funds that Charter Oak had put into interpleader were released, i.e., July 16, 2012.  Two

months prior to the release of those funds, Maglio and Leonetti's had entered into a Settlement

Agreement and, according to American Guarantee, no remaining claims existed to be appealed.

Maglio disputes American Guarantee's interpretation of the phrase "payment of claims," and

argues that the payment date is the date on which Charter Oak released its claims to the money,

i.e., January 26, 2012.  Maglio argues that Charter Oak's interpleading of those funds triggered

American Guarantee's duty to defend and post an appellate bond.  Further, although Maglio and

Leonetti's did enter a Settlement Agreement, Maglio points out that the Agreement would be

"automatically terminated, rescinded and considered null and void if Maglio's insurers (either

collectively or individually) agree[d] in writing to post on Maglio's behalf a valid and collectible

bond for 120% of the Judgment … ."  ECF 128, Ex. 31 (Settlement Agreement) ¶ 23.  However,

the Court notes that the Settlement Agreement required any such bond to be paid "on or before May 18, 2012" in order for such termination to take place.

The Court declines to decide on the meaning of this contractual provision at this time, noting that the relevant language may be ambiguous and raise factual questions that will more appropriately be decided by the jury or after a fuller development of the record.

### 3. Reasonableness of American Guarantee's Denial of Coverage

Although it is not clear from its pleadings and briefings, Maglio may be pursuing a claim against American Guarantee based on the reasonableness of its decision to deny coverage. American Guarantee has argued that this Court's October 24 Order bars this claim, because Pennsylvania law applies on objective test that is met whenever an objectively reasonable basis existed to deny coverage, regardless of the insurer's actual reason. See Robbins v. Metropolitan Life Ins. Co., No. 08-0191, 2008 WL 5412087, *8 (E.D. Pa. Dec. 29, 2008) (dismissing claim based on objective test, which establishes that "as long as a reasonable basis for denying the claim exists, even if it is not the actual basis relied upon by the insurance company, bad faith has not occurred"). The Court agrees that Maglio may not relitigate the issue of whether American Guarantee appropriately denied coverage or reserved its rights to deny coverage. However, as discussed above, Maglio's claims extend beyond American Guarantee's duty to indemnify and concern its duty to defend. Moreover, although this Court found that the insurers did not have a duty to indemnify for the Forte brand claim, it did so because the underlying trial record was not sufficiently clear such that Maglio would be able to meet its burden to show that the jury awarded Leonetti's damages based on a covered, as opposed to a non-covered, claim. In light of this analysis, a question remains as to whether American Guarantee's refusal to participate in Maglio's defense was reasonable in light of (1) the principle that an insurer has a duty to defend

the insured until it can confine the claim to a recovery excluded from the policy, and (2) the existence of a possible trade libel claim against Maglio in the Forte brand trial.

## IV.   Conclusion

This is an unusual case that concerns a topic on which there is little appellate guidance. This Court believes that granting summary judgment for any party is not warranted at this time, not just because of lingering fact issues, but also because appellate review would be more informed if based on a trial record, with direct and cross examination of key witnesses in the context of disputed facts related to the underlying state court litigation.

An appropriate Order follows.

## APPENDIX A

### List of Key Figures for Chronologies

- <u>CO</u> – Charter Oak Insurance Company

- <u>Maglio</u> – Maglio Fresh Food

- <u>AG</u> – American Guarantee and Liability Insurance Company

- <u>Amy Baker</u> – CO employee in the Major Case Unit, who handled Maglio's claims

- <u>Rex Brien</u> – attorney at Christie, Pabarue, and Young, retained by AG to advise on coverage issues

- <u>James Christie</u> – attorney at Christie, Pabarue, and Young, retained by AG to advise on coverage issues

- <u>Richard Darnall</u> – attorney at Reger Rizzo & Darnall LLP, retained by CO to represent Maglio in the underlying litigation

- <u>Ronald Daugherty</u> – attorney at Salmon, Riccheza, Singer & Turchi LLP, independently retained by Maglio

- <u>Stewart Greenleaf</u> – attorney at Elliot Greenleaf, retained by CO as local counsel on coverage issues

- <u>David Haase</u> – attorney at White and Williams LLP, represented Leonetti's in the underlying litigation

- <u>Shane Heskin</u> – attorney at White and Williams LLP, represented Leonetti's in the underlying litigation

- <u>Susan Hogan</u> – attorney at Kramon & Graham PA, retained by CO to advise on coverage issues

- <u>Sara Katz</u> – claims representative of AG

- <u>Edward Kelbon</u> – attorney at Reger Rizzo & Darnall LLP, retained by CO to represent Maglio in the underlying litigation

- <u>Stephen Klepper</u> – attorney at Kramon & Graham PA, retained by CO to advise on coverage issues

- <u>Charles Lunden</u> – expert witness retained by Leonetti's in the underlying litigation

- <u>Thomas Nihill</u> – accounting expert retained by Maglio in the underlying litigation

- <u>Joseph Turchi</u> – attorney at Salmon, Riccheza, Singer & Turchi LLP, independently retained by Maglio

## APPENDIX B

**Chronology of Facts Relevant to the Intervention/Jury Interrogatory Issue**

| Date | Event |
|------|-------|
| July 11, 2011 | CO filed a Petition for Limited Intervention to submit special verdict forms to the jury.  CO also requested that its participation not be revealed to the jury as any reference to insurance coverage would be improper and prejudicial.  CO stated in its petition that it was "necessary to preserve [CO's] rights as to coverage, if any."  ECF 129, Ex. 7. |
| July 18, 2011 | In a pretrial conference, the trial judge ruled that CO's petition was untimely.  ECF 129, Ex. 17 at 56-59.  The trial judge noted that CO could have filed the request sooner and that the deadline for responses to the petition had not yet arrived by the time trial was set to start.  (It seems as though the trial was supposed to happen the next day, however, the trial was delayed for reasons that are unclear.)  The judge stated:  "If it's considered an effective denial, your client effectively denied their own petition by not filing it in enough time to give opposing counsel an opportunity to respond."  Id. at 59-60. |
| Aug. 4, 2011 | The court denied Charter Oak's Petition in a formal Order.  ECF 129, Ex. 8.  The Order stated that "counsel for [CO] may sit at counsel table and make appropriate suggestions for their insured to any issue 'joined' in this case but may not otherwise participate at trial."  Id. |
| Aug. 12, 2011 | CO submitted a Motion for Reconsideration.  In its Motion, CO stated that its Petition "was predicated, in part, on the fact that its interests are not, and cannot, be represented by any of the parties, but also, and more importantly, because the interests of [CO] and its insured, Maglio, are potentially adverse with respect to the coverage afforded Maglio for the counts asserted against it and the damages sought in connection with those counts.  Indeed, on July 21, 2011, counsel for Maglio expressly advised the Court that he would only represent Maglio's interests, not Charter Oak's interests."  ECF 129, Ex. 28 at 2 (emphasis in original). |
| Aug. 12, 2011 | CO also filed a Notice of Appeal.  ECF 129, Ex. 9.  That appeal was denied as interlocutory.  Id., Ex. 10 (undated). |
| Sept. 19, 2011 | The trial court denied CO's Motion for Reconsideration.  ECF 1 (Compl.), Ex. 10 (Transcript of Motion for Reconsideration hearing).  At the hearing, Mr. Kelbon stated that he was unwilling to submit the special interrogatories because it posed a conflict with the interests of his client, suggesting that it might make the case more complex for the jury's decision.  The court directed Mr. Kelbon to consider any interrogatories suggested by CO and to submit them to the court "unless it is to their client's disadvantage in this trial."  Id. |
| Sept. 28, 2011 | Email from Ms. Hogan explaining that CO should amend its proposed jury interrogatories to include interrogatories on the issue of trade libel.  CO 12753 (document handed to the Court at the June 26 oral argument). |
| Sept. 29, 2011 | Letter sent from Ms. Hogan to Mr. Darnall and Mr. Kelbon attaching Proposed Special Interrogatories that it had submitted to the Court.  Ms. Hogan explains that CO sent the proposed interrogatories "in light of Judge |

| | |
|---|---|
| | Bernstein's directive that Maglio make a determination as to whether it will submit the Proposed Special Interrogatories to the court." The letter also states: "Please be aware that a consequence of a decision by Maglio not to submit the Proposed Special Interrogatories to the court may be a finding in a subsequent proceeding that Maglio has the burden of establishing what portion, if any, of the verdict is potentially covered … ." ECF 148-1, Ex. 1. |
| Oct. 2011 | After nine days of trial, the jury advised the trial court that it could not reach a decision concerning the Forte brand claim. The court declared a mistrial as to the Forte brand claim, but allowed the Maglio brand claim to proceed to verdict on a single count of unfair competition. Am. Compl. ¶ 34; Ans. ¶ 34. |
| Oct. 3, 2011 | The court entered a general verdict against Maglio on the Maglio brand claim for a total of $2,555,000 ($2,000,000 for compensatory damages and $555,000 for punitive damages). The verdict did not state the basis of the award of either compensatory or punitive damages. Am. Compl. ¶ 39, Ex. 15 (verdict sheet). |
| Dec. 7, 2011 | Leonetti's and Maglio retried the Forte brand claim, on a single count of unfair competition. Am. Compl. Ex. 20 (verdict sheet). |
| Dec. 20, 2011 | Mr. Greenleaf asked Mr. Daugherty to recommend to Maglio that it submit CO's jury interrogatories and attached letter from Dec. 16, 2011, making the same request. ECF 148, Ex. 2. |
| Dec. 22, 2011 | CO made available its $1 million policy limit to Maglio, authorizing it to use the money to attempt to settle on Dec. 22. Maglio was unsuccessful in these efforts at that time. Am. Compl. ¶ 45 & Ex. 19 (Dec. 22, 2011 letter from Charter Oak to Maglio). |
| Dec. 22/23, 2011 | The jury returned a general verdict against Maglio in the Forte brand claim trial and awarded Leonetti's $660,000 in compensatory damages. Am. Compl. ¶ 45 & Ex. 20 (verdict sheet). |

**APPENDIX C**

**Chronology of Facts Relevant to the Refusal to Settle Issue**

| Date | Event |
| --- | --- |
| May 4, 2010 | CO issued its initial reservation of rights letter, stating that trade libel was the only claim potentially covered by the policy.  ECF 131, Ex. 4 (May 4, 2010 reservation of rights letter). |
| Sept. 29, 2010 | Maglio's insurance broker (Safegard Group) sent notice to AG of Maglio's claims.  ECF 128, Ex. 3. |
| Oct. 7, 2010 | Ms. Katz responded to the notice to request information about the claim.  ECF 128, Ex. 4.  On the same day, Mr. Kelbon, responded and attached a copy of his most recent status report to CO and a copy of Leonetti's Amended Complaint in the underlying action.  ECF 128, Ex. 5.  Based upon Mr. Kelbon's analysis, Ms. Katz responded that she did not think the case would reach the excess layer of insurance and would close the case file, but asking Mr. Kelbon to let her know if things changed and there was a potential for a high six figure verdict, in which case she would reopen the file.  Id. |
| Apr. 11, 2011 | Mr. Nihill, submitted an expert report, concluding that a reasonable damage calculation for the Forte brand claim would be less than $250,000.  ECF 128, Ex. 8. |
| Apr. 22, 2011 | Mr. Nihill submitted a supplemental report concluding that the damages for the Maglio brand claim would be no more than $114,306.  ECF 128, Ex. 9. |
| May 3, 2011 | Ms. Katz emailed Mr. Kelbon and asked him to provide an update as to the valuation of the claims.  Mr. Kelbon responded that a "realistic damages figure [for the Forte brand claim] is in the $250,000 range" and that the total damages for the Maglio brand claim would probably be below $200,000.  ECF 128, Ex. 10.  Ms. Katz responded stating that she would maintain a closed file based on Mr. Kelbon's valuation, but asking him to let her know if anything changed and he began to value the underlying action at a value greater than $500,000.  Id.  Mr. Kelbon testified at his deposition that he consistently believed that Leonetti's claims were not valid and that they were overreaching.  ECF 128, Ex. 7 (Kelbon Dep.) at 142-43. |
| Sept. 15-16, 2011 | Mr. Heskin, sent a letter to Maglio's counsel on Sept. 15, 2011.  ECF 128, Ex. 13.  The letter offered to settle all claims for $1.5M.  On Sept. 16, 2011, via email, Mr. Heskin alternatively offered to settle the trade libel claim for $1M.  The email noted that Leonetti's had previously offered to settle the trade libel claim for $1M but that that offer had been rejected.  Mr. Darnall, forwarded the email thread to Ms. Baker, observing that it seemed as if Leonetti's wanted to receive the $1M but continue the litigation over the Maglio brand claim.  ECF 128, Ex. 13. |
| Sept. 23, 2011 | Email exchange in which Mr. Haase suggested to Mr. Greenleaf, that CO should pay the policy limits to settle the trade libel claim (the Forte brand claim) and "run like hell" from the unfair competition claim.  ECF 128, Ex. 14. |
| Sept. 26, 2011 | Mr. Lunden, produced a supplemental report supporting damages in excess of |

| | |
|---|---|
| | $5M on the Maglio brand claim. ECF 131, Ex. 32 (Sept. 26, 2011 Lunden Second Supplemental Report). |
| Sept. 27-Oct. 7, 2011 | Mr. Greenleaf emailed Mr. Haase, copying Ms. Hogan, information him that CO would not entertain a piecemeal settlement of the claims against Maglio, but rather, that any settlement would need to result in a full release of all claims that were or could be asserted in the lawsuit. ECF 128, Ex. 14. |
| Oct. 2011 | After nine days of trial, the jury advised the trial court that it could not reach a decision concerning the Forte brand claim. The court declared a mistrial as to the Forte brand claim, but allowed the Maglio brand claim to proceed to verdict on a single count of unfair competition. Am. Compl. ¶ 34; Ans. ¶ 34. |
| Oct. 3, 2011 | The court entered a general verdict against Maglio on the Maglio brand claim for a total of $2,555,000 ($2,000,000 for compensatory damages and $555,000 for punitive damages). The verdict did not state the basis of the award of either compensatory or punitive damages. Am. Compl. ¶ 39, Ex. 15 (verdict sheet). |
| Oct. 24, 2011 | Mr. Turchi sent a letter to Ms. Katz, demanding that AG defend and indemnify Maglio for all claims in the underlying action. ECF 128, Ex. 20. |
| Oct. 26, 2011 | Ms. Katz emailed Ms. Baker of CO to confirm that CO would continue to defend Maglio. Ms. Baker responded that CO would continue to defend as to post-trial motions and any eventual appeal. ECF 128, Ex. 18. |
| Nov. 14-16, 2011 | Ms. Katz emailed Mr. Kelbon asking for clarification as to what happened at trial. Mr. Kelbon responded, explaining that several claims, including the trade libel claim, would need to be retried in December. ECF 128, Ex. 16. Ms. Katz responded by asking what claim was tried to verdict, and Mr. Kelbon responded "[u]nfair competition." Id. |
| Nov. 16, 2011 | Ms. Katz provided Maglio's insurance broker, Preferred Concepts Underwriting, a status update of the underlying litigation. She explained that CO was defending Maglio, but that CO disclaimed indemnity for the Maglio brand verdict, since it was based on an uncovered claim for unfair competition. Ms. Katz stated that AG would likely disclaim coverage. She further explained that the trade libel claim had not yet been adjudicated. ECF 128, Ex. 17. It is unclear whether Ms. Katz's coverage analysis pertained to the Maglio brand verdict, which she notes has not yet been adjudicated, or the Forte brand verdict. |
| Nov. 29, 2011 | Lonetti's sent a letter to Judge Bernstein stating that it would have globally settled all claims against Maglio for less than $1 million policy limits if a good faith offer has been made before trial. Ans. ¶ 7. |
| Dec. 2, 2011 | Ms. Katz responded to Mr. Turchi's Oct. 24 demand letter by disclaiming coverage for the Maglio brand verdict and stated that AG had no duty to defend where a defense was being provided under the primary policy. ECF 128, Ex. 21. |
| Dec. 7, 2011 | Leonetti's and Maglio retried the Forte brand claim, on a single count of unfair competition. Am. Compl. Ex. 20 (verdict sheet). |
| Dec. 12, 2011 | Mr. Darnall emailed counsel for Leonetti's and offered Leonetti's $400,000 as a global settlement of all claims. ECF 128, Ex. 22. Mr. Proper, counsel for Leonetti's, rejected this offer as not being in good faith. Id. |

| | |
|---|---|
| Dec. 16, 2011 | Mr. Turchi sent a letter to Ms. Hogan, demanding tender of $1M limits.  Mr. Turchi explained that Leonetti's had demanded in excess of the policy limit and that AG would not contribute unless CO contributed its policy limit.  Mr. Turchi also contended that the Maglio brand verdict was likely covered by CO's policy.  ECF 131, Ex. 20 (Dec. 16, 2011 Letter). |
| Dec. 19, 2011 | Ms. Hogan responded to Mr. Turchi's letter, advising Mr. Turchi that AG did not believe, based on its investigation, that the compensatory damages that allegedly stemmed from the potentially covered count of trade libel approached or exceeded CO's policy limit.  Ms. Hogan then requested that Mr. Turchi provide CO with the factual and legal basis for his contention that some or all of the verdict on the Maglio brand claim and/or the potential verdict on the Forte brand claims included over $1M or more in damages.  ECF 128, Ex. 23.  Sara Katz at AG was copied on the letter. |
| Dec. 22, 2011 | Mr. Klepper notified Mr. Turchi, via letter, that CO would make available its $1 million policy limit to Maglio and authorized Maglio to use the money to attempt to negotiate a global settlement.  Maglio was unsuccessful in these efforts at that time.  ECF 128, Ex. 25. |
| Dec. 22/23, 2011 | The jury returned a general verdict against Maglio in the Forte brand claim trial and awarded Leonetti's $660,000 in compensatory damages.  Am. Compl. ¶ 45, Ex. 20 (verdict sheet). |
| Dec. 27, 2011 | Mr. Turchi informed AG that Leonetti's increased its demand to $2M and requested that AG pay $1M toward a global settlement.  ECF 128, Ex. 26.  In another email on the same day, Mr. Turchi wrote that he believed that CO's and AG's coverage positions were incorrect because "the evidence in both trials supports that the jury awards were based on trade libel."  ECF 128, Ex. 26.  Ms. Katz responded, asking Mr. Turchi to provide additional information to support his contention that both verdicts were based on trade libel.  Ms. Katz also wrote:  "This is the first I have heard of this and need further information in order to take that into account for our evaluation."  Id. |
| Jan. 4, 2012 | Ms. Hogan sent a letter to Mr. Turchi reminding Maglio that Charter Oak had tendered $1M and reiterating CO's willingness to offer those funds for settlement of claims.  Mr. Brien also received the letter.  ECF 138, Ex. 18. |
| Jan. 9, 2012 | Mr. Christie sent a letter to Ms. Hogan objecting to the tendering of the policy limits by CO and arguing that the policy only potentially covered the $660,000 Forte brand claim.  ECF 131, Ex. 23. |
| Jan. 25, 2012 | Ms. Hogan responded to Mr. Christie's Jan. 9 letter, explaining that CO believed the policy limits "should remain available to Maglio, as Maglio and Leonetti's continue to explore settlement, and because of the potential that one of the verdicts entered against Maglio in the lawsuit could be the subject of appeal and or retrial and could potentially result in a verdict resulting from trade libel in an amount that exceeds the limit."  Ms. Hogan also explained that CO did not tender its policy limit in an effort to extinguish its obligation to defend Maglio; rather, CO would continue to defend Maglio in connection with post-trial motions, subject to a reservation of rights, and CO retained appellate counsel for Maglio to review the trial court record and determine whether a reasonable basis existed for appeal of one or both of the verdicts |

| | |
|---|---|
| | entered against Maglio.  ECF 131, Ex. 24 (Jan. 25, 2012 Letter). |
| Jan. 26, 2012 | CO filed a complaint in <u>Charter Oak Fire Ins. Co. v. Leonetti's Frozen Foods, Inc., et al.</u>, Phila. Co. Ct. of Common Pleas, January Term 2012, No. 3429. (Dec. 22, 2011) (the "Equitable Interpleader Action").  Am. Compl., Ex. 24 (Complaint for Equitable Interpleader).  Charter Oak offered to deposit its $1 million policy limit plus post-judgment interest accrued as of the date of its deposit of those funds with the court. |
| Feb. 7, 2012 | CO filed a motion to deposit its policy limit, plus post-judgment interest accrued through the date of the filing of its Complaint, with the court in the Equitable Interpleader Action.  Am. Compl. ¶ 48, Ex. 25 (motion). |
| Feb. 29, 2012 | Mr. Greenleaf emailed Mr. Daugherty, reiterating that CO would pay "the cost of an appeal bond, but only in the amount of the policy limits plus interest" in response to a question from Mr. Daugherty.  ECF 129, Ex. 25. |
| Mar. 5, 2012 | The court granted Charter Oak's Feb. 7 motion in the Equitable Interpleader Action and Charter Oak then deposited the funds into an interest-bearing account.  Am. Compl. ¶ 48 & Ex. 26 (Order granting motion). |
| Mar. 13, 2012 | Receipt for the Deposit of Escrow.  ECF 137, Ex. A. |
| May 8, 2012 | Maglio and Leonetti's entered a settlement agreement for $4.5 million. Charter Oak did not participate and was not involved in negotiation of the deal.  Am. Compl. Ex. 27 (Settlement Agreement); Ans. Ex. 4 (same).  After execution, Maglio sent Charter Oak a copy of the Agreement.  Am. Compl. ¶ 53 & Ex. 30 (May 8, 2012 email from Justin Proper, counsel for Leonetti's, to Ms. Hogan). |
| May 9, 2012 | Maglio filed a Motion for Release of Funds Deposited by Charter Oak in the Equitable Interpleader Action and Leonetti's filed a Notice of Non-Opposition to Maglio's motion.  Am. Compl. ¶ 57 & Exs. 35-36 (Maglio's and Leonetti's motions, respectively). |
| May 18, 2012 | Charter Oak filed an Emergency Petition to Intervene in the Underlying Action to request that the court grant it leave to file an opposition to Maglio's Motion to Approve the Entry of a Consent Judgment.  Am. Compl. ¶ 55 & Ex. 33 (Emergency Petition). |
| May 29, 2012 | Charter Oak then filed an Opposition to Motion to Release Funds in the Equitable Interpleader Action.  Am. Compl. ¶ 58 (Opposition). |
| June 14, 2012 | The court granted Charter Oak's Emergency Petition and scheduled a hearing for July 24, 2012. |
| June 28, 2012 | Charter Oak filed a Praecipe to Withdraw Opposition.  Am. Compl. ¶ 58 & Ex. 36 (Praecipe). |
| July 9, 2012 | The court then entered an Order directing Charter Oak to distribute the full amount of the deposit to Leonetti's.  Dkt. No. 40 ¶ 36. |
| July 16, 2012 | The funds were released to Leonetti's by the court. |