IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Charter Oak Insurance Co., | : | CIVIL CASE |
|     Plaintiff, | : | |
|                 v. | : | |
| | : | |
| Maglio Fresh Food d/b/a Maglio's | : | |
| Sausage Co., et al., | : | |
|     Defendants. | : | NO. 12-3967 |

**MEMORANDUM RE FACTUAL FINDINGS**

**Baylson, J.**                                                                                      **August 8, 2014**

## I. Introduction

The procedural history and factual background of this lawsuit are set forth more fully in this Court's Memoranda of October 24, 2013 (ECF 58) and July 14, 2014 (ECF 176). Both opinions attached chronologies of material events. Following this Court's denial of the parties' cross-motions for summary judgment, ECF 177, Maglio Fresh Food ("Maglio") and its primary insurer, Charter Oak Insurance Company ("Charter Oak"), agreed to settle their claims against one another. The Court then held a three-day bench trial to decide the bad faith claims of Maglio against American Guarantee Liability and Insurance Company ("American Guarantee"), beginning on July 28, 2014.[1]

After conclusion of the evidence, the Court heard argument on August 1, 2014, following which the Court made factual (and credible) findings on the record. This memorandum expands on those findings.

---

[1] Both insurers are related to other entities, whose names have been used interchangeably throughout this litigation and in both documentary and testimonial evidence. Thus, Charter Oak is occasionally referred to as Travelers and American Guarantee is occasionally referred to as Zurich.

## II. Factual Findings

On March 8, 2010, Leonetti's, a competitor of Maglio, filed a lawsuit against Maglio (the "Underlying Action"). On February 4, 2010, Maglio tendered the Underlying Action to Charter Oak. Christine Lauer of Charter Oak sent Maglio a letter on May 4, 2010, following up on an earlier letter sent on March 3. AG Ex. 3. The May 4 letter recognized that the alleged damaged for trade libel could be covered by the Charter Oak policy, but also stated that "[n]one of the other claims asserted … qualify for coverage … ." Because of the potential for coverage, Charter Oak agreed to provide Maglio with a defense, but also reserved its rights to later contest whether its policy covered any damages awarded in Leonetti's favor.

On October 6, 2010, Leonetti's filed an Amended Complaint in the Underlying Action. In light of the Amended Complaint, Amy Baker, a Major Case Specialist at Charter Oak, sent an updated reservation of rights letter to Maglio, reiterating that any alleged damages for trade libel in the Amended Complaint could be covered under the policy, but that no other claims would qualify for coverage. AG Ex. 5. Charter Oak also reiterated that it would continue to defend Maglio in the Underlying Action.

### A. Trial #1

In October 2011, Leonetti's tried its case to a jury in the Philadelphia Court of Common Pleas. After nine days of trial, the jury advised the Court that it could not reach a decision on the ownership of the Forte brand, and the Court declared a mistrial as to the claim involving that brand name (the "Forte brand claim").[2] The jury did reach a verdict with respect to Leonetti's claims related to the Maglio brand (the "Maglio brand claim"), awarding $2,000,000 in compensatory damages and $555,000 in punitive damages to Leonetti's.

---

[2] The parties in the Underlying Action also refer to the Forte brand claim as the trade libel claim, and it is the only claim involving allegations of trade libel.

After the Maglio brand verdict, Maglio asked Joseph Turchi, Esquire, previously engaged by Maglio in an unrelated matter, to provide counsel as to Maglio's insurance claims. Mr. Turchi testified that he reviewed a number of documents and had lengthy discussions with Edward Kelbon, Esquire, trial counsel to Maglio, appointed by Charter Oak, which formed the basis of his opinion that both insurance policies covered the Maglio brand verdict. Accordingly, on October 24, 2011, Mr. Turchi sent letters to Charter Oak and American Guarantee, disputing the insurers' positions on coverage of the Maglio brand verdict. AG Ex. 21 (Oct. 24, 2011 letter from Turchi to Sara Katz, Esquire, a Claims Case Manager at American Guarantee); AG Ex. 36 (Oct. 24, 2011 letter from Turchi to Baker). In his letter to American Guarantee, Turchi writes that Charter Oak "advised [Maglio] that it will not indemnify Maglio for the October 6, 2011 jury verdict in the Leonetti action. We have advised Travelers that Maglio does not accept the denial and have asked [Charter Oak] to reconsider its position." AG Ex. 21.

Susan Hogan, Esquire, of Kramon & Graham, P.A., Charter Oak's coverage counsel, sent a response to Turchi on Oct. 31, 2011. AG Ex. 20. As for the Maglio brand verdict, Hogan stated that Charter Oak's determination that its policy did not cover the Maglio brand verdict was "consistent with its previously stated coverage position" and asked that Maglio provide any basis for its assertion that the policy covered the verdict. Id. Hogan also wrote that "Travelers [would] continue to defend Maglio in the [Underlying Action], pursuant to a reservation of its rights, and as set forth in [earlier coverage letters, such as the May 4 letter]." Id. Hogan further informed Turchi that Charter Oak had retained John Hare, Esquire, to review the trial court record and determine whether a reasonable basis for appeal existed. Id.

Katz responded to Turchi by letter on December 2, 2011. In her letter, Katz notes that "[a]ccording to defense counsel … [t]he court previously dismissed the unjust enrichment claim

3

and bifurcated the trial so that the claims for tortuous [sic] interference and trade libel are set to be tried at a later date." AG Ex. 22. In other words, Katz wrote, "[t]he issue of trade libel was not adjudicated in this matter and was not an issue in the jury's verdict." Id. Katz went on to summarize: "[Charter Oak] continues to provide a full defense for all aspects of the litigation. However, [Charter Oak] has stated that it owes no indemnity to Maglio Brothers for the verdict rendered in this matter[,]" i.e., the Maglio brand verdict. Id. In light of those circumstances, Katz stated, American Guarantee had "no duty at this time to provide a defense or indemnity to [Maglio] for the subject matter." Id. The letter then proceeds to set forth the relevant American Guarantee policy provisions and to conclude that: (1) American Guarantee "do[es] not have the duty to provide a defense where one is being provided under the primary policy"; (2) the verdict is based on a claim for unfair competition, which has been disclaimed under [Charter Oak's] police, American Gurantee's Coverage A is not applicable"; and (3) "[w]ith regard to Coverage B, unfair competition is not a covered loss." Id.

American Guarantee's December 2 letter and the position it set forth were reasonable. So long as Charter Oak continued to provide a complete defense of Maglio, American Guarantee had no obligation to do the same. American Guarantee also reasonably disclaimed indemnity for the Maglio brand verdict based on information available at the time. Katz had reviewed the information available to her at the time – including the pleadings in the Underlying Action, reports written by Kelbon, and her own communications with Mr. Kelbon – to ascertain the details of what happened at the first trial and to disclaim coverage under Coverage A and Coverage B of the American Guarantee policy. Additionally, Ms. Katz relied on disclaimer letters and communications with Charter Oak, which it was entitled to do, since Coverage A of the American Guarantee policy followed the form of Charter Oak's policy.

4

B.   **Trial #2**

Leonetti's retried the Forte brand claim in December 2011 before the same judge. On December 22, 2011, Steven Klepper, Esquire, of Kramon & Graham wrote, on behalf of Charter Oak, to express willingness to tender the full policy limits, $1,000,000, to Maglio and American Guarantee "toward a settlement and dismissal with prejudice of all claims in the [Underlying Action] (including the claims that previously proceeded to verdict)." M. Ex. 39. However, the letter did not concede coverage for indemnity. The next day, the jury returned a verdict in favor of Leonetti's for $660,000.[3]

Sara Katz testified that she knew of Charter Oak's decision to tender prior to receiving the letter from Klepper and that she attempted to determine whether American Guarantee should accept it and contribute to settlement but that the jury returned a verdict before she completed her analysis. Later, after receiving Klepper's letter, James Christie, Esquire, of Christie Pabarue Mortensen and Young – retained by American Guarantee in December 2012 to act as coverage counsel (and who was also trial counsel) – wrote to Hogan stating American Guarantee's concerns with Charter Oak's decision to tender its limits. M. Ex. 42. Christie summarized American Guarantee's position as follows:

> [B]ased upon [Charter Oak's] repeated representations that the verdict rendered in the first trial in this matter, regarding the Maglio's Brand Stromboli claims, is not covered under the [Charter Oak] primary policy at issue, and in light of the fact that the verdict rendered in the second trial regarding the Forte brand claims was $660,000.00, there does not appear to be any reasonable basis for the tender of limits. Tendering limits merely in an effort to extinguish [Charter Oak's] ongoing defense obligation would be patently unreasonable, particularly where [Charter Oak's] tender will not affect a release in favor of [Charter

---

[3] It is unclear whether the evidence presented to the jury only involved allegations of trade libel, but in any case, the record is clear that the court charged the jury only on an "unfair competition" cause of action and that the jury found Maglio liable for "unfair competition."

> Oak's] insured. … Moreover, where, as [Charter Oak] conceders, [Charter Oak] has no obligation to pay more than the $660,000 verdict, payment of [Charter Oak's] $1 million limit of liability for would properly exhaust [Charter Oak's] policy so as to potentially trigger coverage under the … excess policy.

Id. at 1.  The letter ended by advising Charter Oak that American Guarantee continued to investigate under a full reservation of rights and additionally reserved any rights that it might have had against Charter Oak.  Id. at 2.

Hogan responded on behalf of Charter Oak on January 25, 2012.  M. Ex. 43.  Hogan explained Charter Oak's reasons for tendering its full policy limits:

> Charter Oak tendered its Policy Limit during the re-trial of the claim against Maglio on its Forte brand Stromboli ("the Forte Brand") at Maglio's request, and when it became apparent that the evidence proffered during the re-trial on the Forte Brand claim might support a verdict in excess of the Charter Oak Policy Limit for compensatory damages attributed to Maglio's alleged trade libel in connection with the Forte brand claim.  While the verdict entered against Maglio on the Forte Brand claim turned out to be for an amount less than the Charter Oak Policy Limit, Charter Oak determined that its Policy Limit should remain available to Maglio, as Maglio and Leonetti's continue to explore settlement, and because of the potential that one or both of the verdicts entered against Maglio in the Lawsuit could be the subject of appeal and/or re-trial, and could potentially result in a verdict(s) resulting from Maglio's alleged trade libel in an amount that exceeds Charter Oak's Policy Limit.

Id. at 1-2.  Hogan made clear that Charter Oak did not tender its policy limit to extinguish its defense obligation and stated that "Charter Oak continues to defend Maglio in the Lawsuit in connection with post-trial motions, <u>subject to a reservation of its rights</u>, and has retained appellate counsel to review the trial court record and determine whether a reasonable basis exists for the appeal of one or both of the verdicts entered against Maglio in the Lawsuit."  Id. at 2 (emphasis added).

6

Despite the fact that Charter Oak clearly tendered its policy limits for the settlement of all claims, including the Maglio brand verdict, the documentary evidence also makes clear that Charter Oak maintained its position that the only claim that its policy potentially covered was the Forte brand claim. <u>See also</u> AG. Ex. 30 (Apr. 24, 2012 letter from Hogan to Turchi) (affirming Charter Oak's willingness to continue to defend Maglio and to make policy limits available for settlement but stating that "because the first verdict entered against Maglio in the Lawsuit (which includes an award of punitive damages) is not covered under the [Charter Oak or American Guarantee] policies, Maglio must contribute towards any settlement reached on its behalf).

Susan Katz of American Guarantee testified at the trial that she recognized that Charter Oak had determined that the verdict in the second trial was for a claim covered for indemnity under the policy, and did not disagree with that conclusion.

On January 26, 2012, Charter Oak elected to file an equitable interpleader action to secure the court's authority to pay its policy limits into court. On February 7, 2012, Charter Oak filed a motion to deposit the funds with the court, and the court granted that request on March 5, 2012. On or around March 8, 2012, Charter Oak paid into court the $1,000,000 plus interest. Throughout this time, Charter Oak continued to defend Maglio. Mr. Kelbon prepared post-trial motions and Charter Oak also retained John Hare, of Marshall Dennehey Warner Coleman & Goggin, to assess Maglio's chances on appeal.

During this time and in the following months, Turchi attempted to persuade both insurers to agree to post an appellate bond in the event that the Court denied Maglio's post-trial motions. Mr. Turchi notified both insurers that any execution on the verdicts by Leonetti's would bankrupt Maglio, and that his attempts to secure a bond for Maglio from an insurance company failed due to Maglio's poor financial condition. Turchi informed both insurers of Maglio's poor

7

financial condition and its inability to obtain a bond, and made clear that Maglio would not opt for bankruptcy but would instead seek to enter into an agreement with Leonetti's to stave off execution.  The Court therefore finds that, under all circumstances, Maglio did not have the resources to post the bond or the ability to find a surety company to post a bond on its behalf, and that both Charter Oak and American Guarantee knew it could not do so.

Charter Oak agreed to make available its policy limits for the appellate bond and to continue to provide counsel to Maglio through the appellate process.  American Guarantee knew that Charter Oak's policy limits – $1 million – would not satisfy the requisite bond, which needed to be 120% of the total judgment or approximately $4 million.  Nevertheless, American Guarantee remained firm in its position that its duties (including any duty concerning an appeal bond) had not been triggered because (1) neither insurance policy covered the Maglio brand verdict, and (2) the Forte brand verdict for $660,000, although covered by the policies, did not reach the primary policy limits.  Moreover, American Guarantee asserted that it had no obligation to provide counsel to Maglio because Charter Oak had agreed to continue doing so throughout any potential appeal.

The court denied Maglio's post-trial motions on May 7, 2012.  The next day, Maglio executed a Settlement Agreement with Leonetti's.  Under the terms of the Agreement, Maglio agreed to "forever and irrevocably assign to Leonetti's all of its Legal Rights" and Leonetti's agreed "not to file a write of execution … or otherwise attempt to collect" any judgment until it had fully prosecuted the assigned legal rights against the insurers.  M. Ex. 49 at 4.  The Agreement additionally provided that it would be "automatically terminated, rescinded and considered null and void if Maglio's insurers (either collectively or individually) agree in writing to post on Maglio's behalf a valid and collectable bond for 120% of the Judgment pursuant to the

Pennsylvania Rules of Appellate Procedure on or before May 18, 2012." Id. at 6.  Mr. Turchi testified that he notified both insurers of the Settlement Agreement and the possibility of terminating the Agreement by posting of a bond within 10 days.[4]

Despite the fact that the Agreement would become null and void if either insurer posted the necessary amount for an appellate bond, neither did so.  In November, 2012, the trial court in the underlying action entered a single judgment against Maglio for the combined amount of the Maglio and Forte brand verdicts.

These findings (supplemented by any deposition designations), shall be the factual basis for the final briefs due August 29, 2014.  No extensions will be granted.

**BY THE COURT:**

**/s/ Michael M. Baylson**

**MICHAEL M. BAYLSON, U.S.D.J.**

O:\CIVIL 12\12-3967 Charter Oak v. maglio\12cv3967.080814.Factual Findings.docx

---

[4] The Agreement further provided that, in the event that Leonetti's recovered less than $2 million [against the insurers], not including its own costs and fees incurred while prosecuting, that Leonetti's would only execute on the judgment up to $250,000 (after giving Maglio notice) and that it would agree to negotiate payment terms with Maglio.  If Leonetti's recovered more than $4,500,000, excluding its costs and fees, Maglio would be entitled to 50% of any amounts recovered in excess of that sum.  On May 10, 2012, Hogan wrote Turchi that Maglio entering into this agreement constituted a breach of the cooperation provision of the Charter Oak policy.